FOSTER, APPELLEE, *v.* CUYAHOGA COUNTY BOARD OF
ELECTIONS; RUSSO, APPELLANT.

[Cite as Foster v. Bd. of Elections (1977),
53 Ohio App. 2d 213.]

214

(No. 37140—Decided August 25, 1977.)

*Messrs. Reminger & Reminger* and *Mr. William P. Farrall*, for appellee.
*Mr. Daniel M. Roth*, for appellant.
*Mr. John T. Corrigan*, prosecuting attorney, for the Cuyahoga County Board of Elections.

JACKSON, J. On October 22, 1976, plaintiff appellee Coleman Foster filed an action seeking a temporary restraining order and a mandatory injunction to enjoin defendant appellant Basil Russo from pursuing the office of Sheriff of Cuyahoga County as a write-in candidate in

the November 2, 1976 general election and to enjoin defendant Cuyahoga County Board of Elections from permitting the candidacy of appellant as a write-in candidate for sheriff in the November 2, 1976 general election.

In his complaint the appellee averred that he and appellant were both write-in candidates for sheriff; that appellant had been an unsuccessful candidate for the Congress of the United States in the Democratic Primary on June 8, 1976; and that appellant's application with the board of elections to be a write-in candidate for sheriff was unanimously approved by the board of elections on or about September 27, 1976. Appellant Russo admitted the above averments in his answer.[1]

According to the record the following is a chronology of events culminating in the filing of an appeal with this court:

On October 29, 1976, appellant filed a motion to dismiss the complaint by appellee; the trial court issued a mandatory injunction which enjoined the board of elections from permitting appellant to run as a write-in candidate for sheriff and appellant from running for the office; and appellant filed a notice of appeal and a motion for stay of the injunction by trial court pending appeal.[2]

On November 1, 1976, this court granted appellant's motion to stay the injunction and ordered the board of elections to count and impound all ballots cast for the appellant. This court further set forth a schedule for the preparation and filing of papers requisite to the appeal.

On November 10, 1976, subsequent to the general election, appellant filed a motion with this court to dismiss his appeal. Appellant's motion to dismiss was overruled. Appellant assigns four errors on appeal:

"1. The trial court erred in failing to grant appellant-defendant's motion to dismiss the complaint.

---

[1] A party need not offer any evidence to prove a fact if it is judicially admitted by the pleadings of the adverse party. Civ. R. 8(B); *Gerrick* v. *Gorsuch, Treas.* (1961), 172 Ohio St. 417.

[2] The board of elections did not appeal the decision of the trial court.

"2. The trial court erred in failing to apply the doctrines of laches and estoppel and in holding that the appellee-plaintiff was not barred from obtaining extraordinary equitable relief in the form of a mandatory injunction.

"3. The trial court erred in holding that Ohio Rev. Code §3513.04 bars a party primary candidate for federal office from seeking a county office by write-in vote in the general election.

"4. The trial court erred in upholding the constitutionality of Ohio Rev. Code §3513.04 under the Ohio and Federal Constitutions."

The following arguments are advanced by appellant in his first assigned error:

"A. A court of Common Pleas lacks subject matter jurisdiction of an election dispute because the decisions of the Board of Elections are final in the absence of fraud, corruption and the like——

"B. Plaintiff lacked standing to bring the action because (1) he had not alleged any legal right of his which would be damaged and (2) he failed to take an administrative appeal from the decision of the Board of Elections—

"(1) Injunctions do not issue to protect abstractions but only legal rights which are being irreparably damaged—— ,

"(2) Plaintiff lacked standing to obtain an injunction by reason of his failure to take a timely appeal from an administrative proceeding——

"C. The complaint of plaintiff fails to state a claim upon which relief can be granted——"

Before considering the errors assigned by appellant, the ultimate disposition of the issues herein requires this court to address the question of mootness.

The Ohio Supreme Court has regularly found election cases to be moot where the relief sought by the plaintiff was to have his name placed on the ballot and the election was held before the case could be decided. *State, ex rel. Gyurcik* v. *Brown* (1964), 176 Ohio St. 288; *State, ex rel. Santora,* v. *Board of Elections of Cuyahoga Coun-*

*ty* (1962), 174 Ohio St. 11; *State, ex rel. Patrick v. Board of Elections of Cuyahoga County* (1962), 174 Ohio St. 12; *State, ex rel. Keller,* v. *Loney* (1959), 169 Ohio St. 394. These cases seemed to have ultimately relied on *Miner* v. *Witt* (1910), 82 Ohio St. 237, which in turn relied on *Mills* v. *Green* (1895), 159 U. S. 651. In *Miner,* the court stated in its syllabus:

"It is not the duty of the court to answer moot questions, and when, pending proceedings in error in this court, an event occurs without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition in error."

Neither *Miner* nor any of the above cited election cases considered a federally recognized exception to the general application of mootness, the exception being the doctrine of "capable of repetition yet evading review." In *Storer* v. *Brown* (1974), 415 U. S. 724, 737, the United States Supreme Court considered a constitutional attack on a California statute similar in effect to R. C. 3513.04. In finding the case not to be moot, the Court stated in note 8:

"The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections. This is, therefore, a case where the controversy is 'capable of repetition, yet evading review,' Rosario v. Rockefeller, 410 US 752, 756 n 5, 36 L Ed 2d 1, 93 S Ct 1245 (1973); Dunn v. Blumstein, 405 US 330, 333 n 2, 31 L Ed 2d 274, 92 S Ct 995 (1972); Moore v. Ogilvie, 394 US 814, 816, 23 L. Ed 2d 1, 89 S Ct 1493 (1969); Southern Pacific Terminal Co. v. ICC, 219 US 498, 515, 55 L Ed 310, 31 S Ct 279 (1911). The 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks. The construction of the statute, an understanding of its operation, and possible constitutional limits on its application,

will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held.''

Because *Miner* seemingly relied on federal doctrine and because none of the reported Ohio cases have rejected the doctrine of ''capable of repetition yet evading review,'' we will follow the reasoning by the Court in *Storer* and dispose of this case on the merits.

In assignment of error No. 1 the first argument advanced by appellant charges that the trial court lacked subject matter jurisdiction because the decision of a board of elections is final absent fraud, corruption, or clear disregard of statutes or court determination. The third argument advanced under this assignment contends that appellee failed to state a claim upon which relief can be granted because the complaint fails to allege fraud, corruption, or clear disregard of statutes or court determinations. Since both arguments are related, we will dispose of them together.

Appellant cites R. C. 3513.05[3] and R. C. 3513.263[4] for

---

[3]R. C. 3513.05 provides in part:

"Each person desiring to become a candidate for a party nomination or for election to an office or position to be voted for at a primary election shall, not later than four p. m. of the ninetieth day before the day of such primary election, file a declaration of candidacy and petition and pay the fee required by section 3513.10 of the Revised Code. Such declaration of candidacy and all part-petitions shall be filed at the same time as one instrument. * * *

"Protests against the candidacy of any person filing a declaration of candidacy for party nomination or for election to an office or position, as provided in this section, may be filed by any qualified elector who is a member of the same political party as the candidate and who is eligible to vote at the primary election for the candidate whose declaration of candidacy he objects to, or by the controlling committee of such party. Such protest must be in writing, and must be filed not later than four p. m. of the eightieth day before the day of the primary election. Such protest shall be filed with the election officials with whom the declaration of candidacy and petition was filed. Upon the filing of such protest the election officials with whom it is filed shall promptly fix the time for hearing it, and shall forthwith mail notice of the filing of such protest and the time fixed for hearing to the person whose candidacy is so protested. They shall also forthwith mail

the proposition that a decision of a board of elections involving a controversy over the validity of a write-in candidacy is final absent fraud, corruption, or clear disregard of statutes or court determination. R. C. 3513.05 details the procedure by which a board of elections would approve a declaration of candidacy and the accompanying petition which are required for candidacy in a primary election. R. C. 3513.263 details the procedure by which a board of elections would approve a nominating petition for candidacy in a general election.

Each of these statutes provides a procedure whereby a qualified elector eligible to vote for a candidate to the office may protest the initial approval of the candidacy by a board of elections. The procedure includes notice and a hearing. Each statute provides that "[s]uch determination shall be final."

---

notice of the time fixed for such hearing to the person who filed the protest. At the time fixed such election officials shall hear the protest and determine the validity or invalidity of the declaration of candidacy and petition. If they find that such candidate is not an elector of the state, district, county, or political subdivision in which he seeks a party nomination or election to an office or position, or has not fully complied with sections 3513.01 to 3513.32, inclusive, of the Revised Code, his declaration of candidacy and petition shall be determined to be invalid and shall be rejected, otherwise it shall be determined to be valid. Such determination shall be final. * * *"

'R. C. 3513.263 provides in part:

"The nominating petitions of all candidates required to be filed before four p. m. of the ninetieth day before the day of the general election, shall be processed as follows: * * *

"Written protests against such nominating petitions may be filed by any qualified elector eligible to vote for the candidate whose nominating petition he objects to, not later than the eightieth day before the general election. Such protest shall be filed with the election officials with whom the nominating petition was filed. Upon the filing of such protests, the election officials with whom it is filed shall promptly fix the time and place for hearing it, and shall forthwith mail notice of the filing of such protest and the time and place for hearing it to the person whose nomination is protested. They shall also forthwith mail notice of the time and place fixed for the hearing to the person who filed the protest. At the time and place fixed, such election officials shall hear the protest and determine the validity or invalidity of the petition. Such determination shall be final."

In *State, ex rel. Flynn,* v. *Board of Elections of Cuyahoga County* (1955), 164 Ohio St. 2d 193, the Ohio Supreme Court, in paragraph one of the syllabus, has construed these statutes and predecessor statutes in the following manner:

"Section 3501.11, Revised Code, providing that each board of elections shall 'review, examine, and certify the sufficiency and validity of petitions and nomination papers,' and Section 3513.262, Revised Code, which provides that each board of elections shall 'examine and determine the sufficiency of the signatures on the petition papers transmitted to or filed with it'; that 'all other matters affecting the validity or invalidity of such petition papers shall be determined by the Secretary of State or the board with whom such petition papers were filed'; that written protests against nominating petitions may be filed 'with the election officials with whom the nominating petition was filed'; and that, upon filing of such protest and *after notice,* 'such election officials shall *hear the protest* and determine the validity or invalidity of the petition' and '*such determination shall be final*'; authorize and require a board of elections to conduct a hearing on a protest against the nominating petition of a candidate who is alleged to be ineligible to assume the office sought, if elected, and to determine the validity of such petition; *and the decision of such board is final and, in the absence of allegations of fraud, corruption, abuse of discretion or a clear disregard of statutes or legal provisions applicable thereto, is not subject to judicial review.*" (Emphasis added.)

See also, *State, ex rel. Ferguson,* v. *Brown, Secretary of State* (1962), 173 Ohio St. 317; *Sullivan* v. *State, ex rel. O'Connor,* (1932), 125 Ohio St. 387.

R. C. 3513.041[5] discloses the requirements for becom-

---

[5] R. C. 3513.041 provides in part:

"A write-in space shall be provided on the ballot for every office, but write-in votes shall not be counted for any candidate who has not filed a declaration of intent to be a write-in candidate pursuant to this section. A qualified person who has filed a declaration of intent may

ing a write-in candidate in either a primary or a general election. R. C. 3513.041 *does not* specifically provide for a protest procedure whereby a qualified elector eligible to vote for a candidate to the office may challenge the approval by a board of elections of a write-in candidacy.

State statutes afford the elector a ready avenue to challenge the validity of a candidacy for party nomination in a primary election. R. C. 3513.05. Similarly, the elector is provided a procedure to challenge the validity of a candidacy in a primary or general election through use of a nominating petition. R. C. 3513.262 and 3513.263.

The procedures pursuant to these sections provide for notice and a hearing before the board of elections. The determination by the board of elections is final, absent allegations of fraud, corruption, abuse of discretion or disregard of applicable law. These protest procedures are designed to insure that only qualified candidates will be considered by the electorate and will have their votes counted. The interest of insuring to the electorate that only qualified candidates will be considered would seem to apply equally to insuring that only qualified write-in candidates will be considered. The reason for the omission by the legislature in failing to provide a procedure for protest in R. C. 3513.041[c] is not clear.

The language, "[s]uch determination shall be final,"

receive write-in votes at either a primary or general election. Any candidate, except one whose candidacy is to be submitted to electors throughout the entire state, shall file a declaration of intent to be a write-in candidate before four p. m. of the twentieth day preceding the election at which such candidacy is to be considered."

[c]R. C. 3501.11(E) and (K) authorize each board of elections to do the following:

"(E) Make and issue such rules, regulations, and instructions, not inconsistent with law or the rules established by the secretary of state, as it deems necessary for the guidance of election officers and voters; * * *

"(K) Review, examine, and certify the sufficiency and validity of petitions and nomination papers; * * *."

These sections allow a board of elections to issue its own rules regarding the establishment of a protest procedure to challenge the validity of a write-in candidacy.

contained in R. C. 3513.05, 3513.262 and 3513.263 is in reference to a determination by a board of elections of a protest proceeding. *See, State, ex rel. Flynn,* v. *Board of Elections of Cuyahoga County, supra.* However, we conclude, because protest procedures to the qualifications of write-in candidates are not specifically provided by statute or in local rules, and where no protest proceeding is, in fact, held, that the initial approval or disapproval by a board of elections of a write-in candidacy is final absent allegations of fraud, corruption, abuse of discretion, or clear disregard of statutes, or applicable legal provisions. *See* R. C. 3501.11(K), note 6, *supra.*

Appellee's complaint alleges essentially that appellant Russo's write-in candidacy is in violation of R. C. 3513.04 and that the board of elections violated Ohio law in approving appellant's write-in candidacy. We find that the complaint by appellee adequately avers a clear disregard of the law. The first and third arguments by appellant in assignment of error No. 1 are overruled.

Appellant also argues under his first assignment of error that appellee Foster lacks standing to bring this action. Specifically, appellant argues that "plaintiff was not among the class of persons which the statute was intended to protect." It is unclear to which statute appellant Russo is referring.

Election laws which set forth limitations on candidacy—the effect of which is to reduce the number of candidates—seem primarily designed to aid the electorate, "to minimize voter confusion." *Lubin* v. *Panish* (1974), 415 U. S. 709, 713. The provisions of R. C. 3513.05, 3513.262 and 3513.263 specifically provide for protests to candidacy by members of the electorate. We, therefore, conclude that the members of the electorate are in the class that may challenge the validity of a candidacy.

The Ohio Constitution, Section 4, Article XV, provides: "No person shall be elected or appointed to any office in this state unless possessed of the qualifications of an elector." *See* R. C. 3513.07. Appellee Foster, by virtue of his acceptance by the board of elections as a write-

in candidate, must have been found to possess the qualifications of an elector and consequently, is in the class of persons which may challenge the validity of a candidacy. We fail to find merit in this argument by appellant.

Appellant further argues under his first assignment of error that appellee Foster failed to appeal the approval of appellant Russo's write-in candidacy by the board of elections under R. C. 2506.01;[7] that R. C. 2506.01 sets forth the exclusive procedure for review; and that consequently, appellee's action for injunctive relief was improperly brought.

The Ohio Supreme Court considered which administrative actions were appealable under R. C. 2506.01. The court held:

"1. The review of proceedings of administrative officers and agencies, authorized by Section 4(B), Article IV of the Ohio Constitution, *contemplates quasi-judicial proceedings only,* and administrative actions of administrative officers and agencies not resulting from quasi-judicial proceedings are not appealable to the Court of Common Pleas under the provisions of R. C. 2506.01. (*Fortner* v. *Thomas,* 22 Ohio St. 2d 13, approved and followed.)

"2. Proceedings of administrative officers and *agencies are not quasi-judicial where there is no requirement for notice, hearing and the opportunity for introduction of evidence.*" (Emphasis added.) *M. J. Kelly Co.* v. *Cleveland* (1972), 32 Ohio St. 2d 150 (syllabus).

As described above, R. C. 3513.041 does not specifically

---

[7] R. C. 2506.01 provides in part:

"Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department or other division of any political subdivision of the state may be reviewed by the common pleas court of the county in which the principal office of the political subdivision is located, as provided in sections 2505.01 to 2505.45, inclusive, of the Revised Code, and as such procedure is modified by sections 2506.01 to 2506.04, inclusive, of the Revised Code.

"The appeal provided in sections 2506.01 to 2506.04, inclusive, of the Revised Code is in addition to any other remedy of appeal provided by law. * * *"

provide for a protest procedure including notice and a hearing. There is nothing in the record to indicate that there was in fact notice and hearing before the board of elections to consider appellant's candidacy. Because there was no requirement for a quasi-judicial proceeding in the present case, R. C. 2506.01 is inapplicable. Appellant's argument is not well taken.

Appellant's second assignment of error alleges that the trial court erred in failing to apply the doctrine of laches and the general equitable principles of estoppel, unclean hands and inequitable conduct.

The factual basis of this argument is that the decision of the board of elections to allow appellant's candidacy was made on September 27, 1976. Appellee filed suit on October 22, 1976; the election was scheduled for November 2, 1976. We construe testimony from the record to indicate awareness by appellee on September 28, 1976, that the board of elections had approved on that same date the write-in candidacy of appellant. Appellant testified that he had expended considerable time and effort campaigning.

The doctrine of laches is an equitable doctrine requiring that "rights should be asserted before lapse of time has made judicial inquiry difficult and uncertain by reason of * * * the intervention of equities;" and further, that, where there is a seemingly excessive lapse of time in asserting a right that, "the burden is on the party asserting such right to explain the delay and to show that it would be inequitable and unjust to refuse the aid of the court in the enforcement of the right." *Russell* v. *Fourth National Bank* (1921), 102 Ohio St. 248, paragraph four of the syllabus. The Ohio Supreme Court cites 19 American Jurisprudence 343, Equity, Section 498 for the elements of laches which include:

"* * * '(1) conduct on the part of the defendant * * * giving rise to the situation of which complaint is made and for which the complainant seeks a remedy * * *; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of defendant's con-

duct and having been afforded an opportunity to institute, a suit; (3) lack of knowledge or notice on the part, of. the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant.' " *Smith* v. *Smith* (1959), 168 Ohio St. 447, 455.

The doctrine of laches has been specifically applied to challenges to a determination by a board of elections of the validity of a candidacy. The Ohio Supreme Court has applied the doctrine of laches to require extreme promptness in the filing of such challenges. "Under the circumstances here, where time is such an important factor, extreme diligence and the promptest of action were required on the part of relator." *State, ex rel. Schwartz,* v. *Brown* (1964), 176 Ohio St. 91; see also, *State, ex rel. Bargahiser* v. *Board of Elections* (1968), 14 Ohio St. 2d. 129; *State, ex rel. Winterfield* v. *Board of Elections of Lucas County* (1958), 167 Ohio St. 531.[3]

We are persuaded that appellee Foster did not demonstrate the promptness required in prosecuting his appeal from the decision of the board of elections to the Common Pleas Court. He delayed twenty-five days in filing the action, the action being filed only eleven days prior to the election. There is nothing in the record explaining the delay. Appellant Russo testified that he had expended substantial effort and expense in his campaign. In appellee's complaint he alleges that "Defendant Basil Russo has actively engaged in political activity aimed at securing for himself the office of sheriff." Appellant Russo further testified that he was surprised by the lawsuit being filed. Pursuant to the rulings in *Smith, supra,* and *State, ex rel. Schwartz, supra,* we conclude that the trial

---

[3] R. C. 3513.05 and R. C. 3513.263 require, respectively, that protests to primary candidacy and protests to candidacy by nominating petition be filed not later than the eightieth day prior to the election, where the proper filing papers must be filed not later than the ninetieth day before the election. See note 3 and note 4, *supra.* These two sections—although inapplicable in the present case—suggest the degree of promptness required by one challenging a candidacy.

court abused its discretion in failing to dismiss appellee's action on the ground that he failed to demonstrate the promptness required under the circumstances herein in filing the action which, in our opinion, constitutes laches.

Appellant's second assignment of error is well taken.

The third assignment of error by appellant asserts that laws which restrict candidacy must be construed liberally in favor of permitting the exercise of candidacy. Specifically, appellant argues that R. C. 3513.04 should be construed in a manner which would not prohibit a person who had sought a party nomination for a "federal" elective office or position at a primary election from becoming a candidate for a non-"federal" elective office at the following general election by write-in.

R. C. 3513.04 provides:

"Candidates for party nominations to state, district, county and municipal offices or positions, for which party nominations are provided by law, and for election as members of party controlling committees shall have their names printed on the official primary ballot by filing a declaration of candidacy and paying the required filing fee.

*"No person who seeks party nomination for an office or position at a primary election by declaration of candidacy shall be permitted to become a candidate at the following general election for any office by nominating petition or by write-in."* (Emphasis added.)

Paragraph two of R. C. 3513.04 does not make a distinction between candidates for state or "federal" office. The language of paragraph two of R. C. 3513.04 seems clearly applicable to a person who seeks any party nomination at a primary election. The Ohio Supreme Court, although not addressing the "federal" office/state office question, stated that "[t]he purpose of R. C. 3513.04, Revised Code, clearly is to prevent a disappointed party candidate who has failed to be selected as a nominee in the primary from again trying to be placed on the elective ballot by entering the arena as an independent candi-

date." *State, ex rel. Gottleib,* v. *Sulligan* (1963), 175 Ohio St. 238, 241. The court makes no reference to any possible "federal" office/state office distinction. Thus, we interpret the state regulations to be the same for candidates for both state and federal offices.

We conclude that paragraph two of R. C. 3513.04 does prohibit a person who sought party nomination at a primary election for a "federal" office from becoming a candidate at the following general election for any office by nominating petition or by write-in.

Appellant argues that paragraph two of R. C. 3513.- 04 must be read in conjunction with paragraph one and that paragraph one does not apply to "federal" offices.

R. C. Chapter 3513 sets forth the procedure and requirements for candidacy in primary elections for both state offices and "federal" offices. R. C. 3513.01 provides in part that:

"* * * primary elections shall be held for the purpose of nominating persons as candidates of political parties for election to offices to be voted for at the next succeeding general election. * * *"

The term "next succeeding general election" encompasses election to both state and "federal" offices.

Paragraph one of R. C. 3513.04 describes the prerequisites, that is, filing a declaration of candidacy[9] and paying the required filing fee,[10] to having one's name printed on the official primary ballot. No other section in R. C. Chapter 3513 specifically provides for having one's name printed on the official primary ballot.

Because the construction of R. C. 3513.04 urged by appellant Russo would not provide requirements or a procedure by which "federal" office seekers could have their names printed on the official primary ballot, we conclude that paragraph one, as well as paragraph two, of R. C. 3513.04 applies to both state and "federal" offices. We construe the terms "state, district, county, and municipal"

[9]*See* R. C. 3513.05.
[10]*See* R. C. 3513.10.

to be references to the area in which electors to the office reside. That is, the term "state" refers to any office in which the candidacy is submitted to electors throughout the entire state. Appellant's third assignment of error is not well taken.

The fourth assignment of error by appellant contends that R. C. 3513.04 is unconstitutional under both the Ohio Constitution and the United States Constitution. However, except in his assignment of error, appellant makes no reference to the Ohio Constitution.

Appellate Rule 12(A) provides in part that:

"*Errors not specifically pointed out in the record and separately argued by brief may be disregarded.*" (Emphasis added.)

Appellate Rule 16(A)(4) provides:

"(A) Brief of the appellant. *The brief* of the appellant *shall contain* under appropriate headings and in the order here indicated: * * *

"(4) *An argument.* The argument may be preceded by a summary. The *argument shall contain the contentions* of the appellant with respect to the assignments of error presented, and the *reasons* therefor, *with citations to the authorities, statutes* and parts of the record *relied on.*" (Emphasis added.)

At a minimum where a statute is argued to be unconstitutional, the appellant must cite which section of the Constitution he contends is in conflict with the statute and he must state his reasons for his conclusion that the statute is unconstitutional. Absent this minimum compliance with the appellate rules, neither the appellee nor the appellate court can reasonably respond to the claim.

Because appellant did no more than claim in his assignment of error that R. C. 3513.04 is in conflict with the Ohio Constitution, we disregard that part of the assigned error alleging unconstitutionality as related to the Ohio Constitution.

With respect to his claim of unconstitutionality of R. C. 3513.04 as it relates to the United States Constitution, appellant—apparently relying on the equal protection

clause of the Fourteenth Amendment—asserts that "the state must meet a heavy burden in justifying restraints on the right to be a candidate, and prove a compelling state interest in the restraint." Appellant states that there is no compelling state interest justifying the restraints imposed by R. C. 3513.04. Appellant notes that R. C. 3513.04 does allow an unsuccessful primary candidate to be a candidate in the general election in the event that he is selected by party committee under R. C. 3513.31. *State, ex rel. Gottleib,* v. *Sulligan, supra.* The class excluded by R. C. 3513.04 from becoming candidates in the general election by nominating petition or by write-in are persons who had sought party nomination at a primary election by declaration of candidacy.

The United States Supreme Court in *Bullock* v. *Carter* (1972), 405 U. S. 134, recognized the legitimate interest a state has in regulating the number of candidates on the ballot and in protecting the integrity of its political processes from frivolous or fraudulent candidacies. Further, the court states that, "the Texas system creates barriers to candidate access to the primary ballot, thereby tending to limit the field of candidates from which voters might choose. The existence of such barriers does not of itself compel close scrutiny." *Id.* at 143. The Court, however, did apply a strict scrutiny standard on the basis that the challenged statute had a substantial impact on voters in that the choice of candidates was severely limited by the challenged statute. Similarly, the court in *Dunn* v. *Blumstein* (1972), 405 U. S. 330; *Kramer* v. *Union Free School District* (1969), 395 U. S. 621; and *Williams* v. *Rhodes* (1968), 393 U. S. 23, applied a strict scrutiny standard where the challenged statute placed a substantial burden on the right to vote or the right to associate for political purposes.

In *Storer* v. *Brown, supra,* at 730, the Court noted:

"* * * the States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways, with respect to both federal and state elections, the time, place, and manner of holding

primary and general elections, the registration and qualifications of voters, and the selection and qualification of candidates.

"It is very unlikely that all or even a large portion of the state election laws would fail to pass muster under our cases; and the rule fashioned by the Court to pass on constitutional challenges to specific provisions of election laws provides no litmus-paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause."

In *Storer*, the Court considered, among other statutory sections, Cal. Elections Code Sections 6402 and 6611 (Deering, 1961),[11] which provide that a candidate who has been defeated in a party primary may not be nominated as an independent or be the candidate of any other party in the general election. In holding this statute to be constitutional, the Court stated:

"* * * The direct party primary in California is not merely an exercise or warm-up for the general election but an integral part of the entire election process, the initial stage in a two-stage process by which the people choose their public officers. It functions to winnow out and finally reject all but the chosen candidates. The State's general policy is to have contending forces within the party employ the primary campaign and primary election to finally settle their differences. The general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds. The provision against de-

[11]Cal. Elections Code Section 6402(a) (Deering, 1961) provides:

"(a) A candidate whose name has been on the ballot as a candidate of a party at the direct primary and who has been defeated for that party nomination is ineligible for nomination as an independent candidate. He is also ineligible as a candidate named by a party central committee to fill a vacancy on the ballot for a general election."

Cal. Elections Code Section 6611 (Deering, 1961) provides:

"A candidate who fails to receive the highest number of votes for the nomination of the political party with which he was registered as affiliated on the date his declaration of candidacy or declaration of acceptance of nomination was filed with the county clerk cannot be the candidate of any other political party."

feated primary candidates running as independents effectuates this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot to those who have won the primaries and those independents who have properly qualified. The people, it is hoped, are presented with understandable choices and the winner in the general election with sufficient support to govern effectively." *Id.*, at 735.

In considering whether R. C. 3513.04 as applied to appellant, falls within the purview of *Storer* v. *Brown*, this court notes that in the case at bar appellant did not seek to have his name placed on the ballot, but sought only write-in status; that appellant sought a different office in the general election from that sought in the primary election; that numerically the electorate was substantially different for the office sought in the general election from the electorate in the primary election; and that an unsuccessful candidate in the party primary election may be placed on the ballot in the general election by party committee pursuant to R. C. 3513.31.

The Court in *Storer* approved Cal. Elections Code Sections 6402 and 6611 because those statutes furthered the legitimate state interest of reserving the general election ballot for major struggles and in so doing presented the electorate with more understandable choices in the general election. The limitation in Cal. Elections Code 6402 and 6611 prohibiting a candidate who has been defeated in a party primary from running as an independent or as candidate of any other party in the general election works as a means to restrict ballot crowding, as a method of prohibiting a candidate from continuing the struggle after losing in the primary, and as a means to avoid providing a forum for continuing intraparty feuds.

In reviewing the effect of the factual dissimilarities between this case and *Storer,* we consider the impact of these factual dissimilarities on the legitimate state interest of preserving the general election for major struggles. We construe the term "major struggle" to mean that the candidates should either be the representatives of a ma-

jor political party or be the representatives of a group independent of a major political party. One purpose is to prevent two candidates of similar political philosophy and party background from splitting the vote and thereby allowing a candidate whose party has only minority support from winning.

A defeated party primary candidate running in a general election by write-in even for a different office with a different electorate can conceivably have the effect of diminishing the general election as a major struggle. There is a strong suggestion that a loser in a party primary is not an independent in terms of political philosophy; party allegiance was demonstrated by candidacy in the primary election. The independent candidacy in the general election of a defeated party primary candidate is suggestive of intraparty feuding.[12] The candidacy of an individual whose political philosophy and voter support is independent of the major parties is not limited by R. C. 3513.04 since this individual would not ordinarily be a candidate in a party primary.

Where an unsuccessful candidate in the party primary is placed on the ballot by party committee pursuant to R. C. 3513.31, there is no ballot crowding; there is no forum for intraparty feuding; and the general election ballot is reserved for major struggles.

We conclude that R. C. 3513.04 falls within the rationale of *Storer* and consequently find R. C. 3513.04 to be constitutional under the United States Constitution. Appellant's fourth assignment of error is not well taken.

In summary, our disposition of assignments of error

---

[12]Appellant Russo stated:

"I think in terms of philosophy I would consider myself a Democrat, although I have been known as a maverick Democrat in Cuyahoga County; consequently, I think there is some question as to whether the party that you keep referring to is in fact my party."

"I said philosophically I would adhere to it; but, if you're asking me that I am a member of the party that Garofoli and Mr. Forbes cochair, I am not."

We consider this testimony suggestive of the intraparty feuding sought to be discouraged in the general election by R. C. 3513.04.

one, three and four[13] determined essentially that the board of elections committed error in approving the application by appellant to be a write-in candidate for sheriff; that the trial court correctly ruled that the provisions of R. C. 3513.04 are constitutional; and that appellant's application for a write-in candidacy should have been barred by the board of elections. Nevertheless, our disposition of appellant's second assigned error, holding that the trial court erred in failing to reject on the basis of laches appellee's action for mandatory injunction seeking to enjoin appellant from achieving write-in status, requires this court to leave the ruling of the board of elections undisturbed.

Accordingly, the order of this court directing the board of elections to impound the votes received by appellant Russo in the 1976 general election for the office of Sheriff of Cuyahoga County is rescinded. The judgment of the trial court is reversed.

*Judgment reversed.*

DAY, C. J., concurs.
STILLMAN, J., dissents.

STILLMAN, J., dissenting. I find it necessary respectfully to dissent from the majority in this case for two reasons.

The first arises from my concern that the ruling will lead to confusion in the minds of potential candidates and the electorate as to the status of a would be "write-in" candidate in the position of the appellant. When an elector seeks to become a write-in candidate at the general election after having previously sought office at a party primary election during the same year, Ohio election laws bar him from ballot access. This is what the majority opinion says but the court has validated the candidacy of

---

[13] The disposition of assignments of error one, three and four, while not necessary for the ultimate disposition of the appeal, are required pursuant to Appellate Rule 12(A).

the appellant in this instance for reasons which do not impress me as legally valid or judicially cogent.

We are determining that under certain, hopefully rare, circumstances a board of elections may ignore the laws of the state of Ohio and permit a candidacy of this kind. If, for any reason, no one hastens into the courts to challenge such an erroneous act, the candidate may obtain votes by the write-in process. Theoretically, therefore, an unauthorized candidate might win election by this process and should he do so, his success would be subject, in my judgment, to challenge in the courts. This is a result devoutly to be abhorred, and we should seek resolutely to prevent its occurrence.

The second reason for this dissent derives from the majority's utilization of the equitable doctrine of laches as the basis for its conclusion. We are holding (1) that the Board of Elections of Cuyahoga County acted improperly in approving the appellant's application to become a write-in candidate for Sheriff of Cuyahoga County, (2) that the trial court was correct in sustaining the constitutionality of R. C. 3513.04; and (3) that the appellant's quest for permission to become a write-in nominee should have been prevented by the board of elections. Having uttered these views, the assertion that the appellee, who was himself merely another elector seeking write-in votes, may be held guilty of laches for delay in asserting a public legal right impresses me as a legal *"non sequitur."*

In substance, it is not the appellee whose erroneous conduct is at issue before us. Rather, it is the egregious misconduct of the board of elections which is properly in question. Our ruling against the appellee operates to condone a violation of the state election laws by the board.

Beyond this, the application of the equitable doctrine of laches to the particular circumstances of this case appears to me to be unfortunate. Unquestionably, where time is an important factor as it usually is in election matters, extreme diligence and prompt action are required from one who challenges the proceedings of an elections board. This is necessary because election arrangements normally

entail the printing of ballots or the preparation of voting machines along with the distribution of notices and absentee ballots in the satisfaction of voting procedures.

However, in the instant case, none of these considerations is urgently applicable. A "write-in" candidacy is provided by law for all general elections. Therefore, the appellant's candidacy required no additional printing and only a minimal amount of notification to any one. The board of elections in a proper write-in situation merely authorizes the officials charged with recording such votes to note them on the records of the precinct.

These conditions have been tacitly recognized by the majority which seeks to levy the charge of laches against the appellee solely by reason of delay in bringing his action below. Presumably, it is believed that this delay affected the appellant adversely through permitting him to engage in various expenditures in pursuit of his election goals.

It is informative in this context to analyze the timetable. The board of elections approved the appellant's candidacy as a write-in candidate for Sheriff on September 27, 1976. The appellee filed an action on October 22, 1976, in the Court of Common Pleas seeking an injunction against this candidacy. It was not until a week later, on October 29, 1976, that the appellant filed his motion to dismiss the complaint. To assert that the appellee was guilty of laches in waiting 25 days before bringing his original action, and to ignore the seven-day delay by the appellant in filing his motion to dismiss the complaint, suggests that procrastination may well have been a factor favorably regarded by the appellant in pursuit of his political objective. Applying laches to excuse a violation of election law where little or no harm was done to the appellant appears to be both unwise and inappropriate.

In Pomeroy's Equity Jurisprudence at p. 50, the distinguished authority recites:

"An important limitation upon the general rule as to the effect of delay has been established by a considerable preponderance of authority. 'Where an injunction is

asked in support of a strict *legal* right, the party is entitled to it if his legal right is established; mere delay and acquiescence will not, therefore, defeat the remedy unless it has continued so long as to defeat the right itself.' * * *"

The equitable doctrine of laches is based upon the coincidence of unwarranted delay and a change of position by the party seeking to invoke the doctrine. *Shanik* v. *White Sewing Machine Corp.* (1941), 25 Del. Ch. 371, 19 A. 2d 831, 837.

In *Smith* v. *Smith* (1959), 168 Ohio St. 447, the court declared:

"Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim."

Here the only material prejudice which could have been incurred by the appellant relates to his expenditure of time and money for his candidacy. The public records of the board of elections indicate that he spent $1,186.34 for pencils in his campaign, advertising his candidacy and presumably making them available for voters to write-in his name on Election day. This was his total expenditure. Considering that his candidacy was county-wide, this sum would scarcely seem to qualify as the kind of expenditure calling for the invocation of laches either "materially prejudicing" the appellant or as a "change of position" justifying what we have characterized as an illegal action.

For these reasons, I would affirm the ruling of the court below and would dismiss the appeal.