JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Christopher Worman appeals from his conviction and sentence after entering a guilty plea to a charge of aggravated murder.
 {¶ 2} Through assigned appellate counsel, appellant claims the trial court initially assigned to his case acted improperly by participating in plea negotiations and refusing appellant's motion for a continuance to permit him to obtain additional expert evidence in his defense. Appellant further asserts the three-judge panel that accepted his plea did so improperly, in that the panel failed to ensure that his plea was knowingly and intelligently made, and neglected to deliberate the evidence of guilt. Appellant also argues the panel did not comply with its duties in imposing the sentence of life imprisonment without parole eligibility.
 {¶ 3} In a separate appellate brief argued pro se, appellant claims his trial counsel rendered inadequate assistance.
 {¶ 4} After a thorough review of the record, this court cannot agree either that any error occurred in the proceedings below, or that appellant received ineffective assistance of trial counsel. Appellant's conviction and sentence, therefore, are affirmed.
 {¶ 5} Appellant's conviction results from events that took place in the early summer of 2000. Appellant and the victim, Mary Ann Davis, had lived together as husband and wife for approximately nineteen years, and together had a daughter who at that time was twelve years old. The family resided in an apartment located on West 52nd Street in Cleveland, Ohio.
 {¶ 6} On June 10, 2000 appellant and the victim became embroiled in an argument over the presence of the victim's brother in their home. The argument escalated to the point that the victim summoned the police. Appellant was arrested for the crime of domestic violence and jailed for three days.
 {¶ 7} Upon his release, appellant discovered, and, additionally, acknowledged, the victim by that time had obtained a court-issued restraining order against him; the order prevented him from either contacting his family or appearing at the apartment without the presence of the police. Since the victim rebuffed appellant's immediate attempt to circumvent this order, on June 14, 2000 he requested police aid to assist him in obtaining some clothing from the apartment.
 {¶ 8} Appellant's arrival in compliance with the restraining order, however, prompted the victim's brother to notify the police that an arrest warrant had been issued for appellant on another charge. This information proved to be correct. As appellant was escorted away, he shouted that he "would kill all of [them] when [he got] out," and pointed at the victim as he called out that she would not be able to "have" his daughter. Appellant apparently secured his second release from jail the following day.
 {¶ 9} On June 16, 2000 the victim left for work at approximately 8:00 a.m. Sometime around noon, one of her neighbors noticed appellant "walking around" the building. The neighbor telephoned the victim; in response, the victim drove home. As the victim parked her truck in the driveway, her neighbor cautioned her that appellant had not been observed to have left the area.
 {¶ 10} Although the victim appeared to enter the building cautiously, some minutes after she did so, two of her neighbors heard "screams for help." They heard the victim saying appellant's name and pleading with him. After calling for emergency assistance, the next-door neighbor looked through a window to see the victim struggling in her kitchen and placing a bloody hand on her own window. Shortly thereafter, the neighbor observed appellant exit the building, enter the victim's truck, and drive away.
 {¶ 11} The police arrived to find the victim dead on the kitchen floor; she had been stabbed repeatedly. She was surrounded by five kitchen knives, some of which were either broken or bent. The subsequent autopsy of her body indicated she had been struck several times by a blunt object and stabbed a total of 99 times.
 {¶ 12} Appellant was arrested at approximately 5:00 p.m. while seated in the victim's truck at a rest area in Conneaut, Ohio. He voluntarily gave both an oral and, later, a written statement admitting he had committed the murder.
 {¶ 13} On June 27, 2000 a four-count indictment was issued against appellant. The first two counts charged appellant with aggravated murder, R.C. 2903.01(A) and (B), murder by prior calculation and design and murder while in the commission of a felony; each count contained a felony murder and a repeat violent offender specification and a notice of prior conviction. Count three charged appellant with aggravated burglary, R.C.2911.11, with a repeat violent offender specification and a notice of prior conviction. Count four charged appellant with grand theft of an automobile, R.C. 2913.02.
 {¶ 14} Appellant pleaded not guilty to the charges at his arraignment and received the services of assigned counsel. Soon thereafter, counsel obtained the trial court's authorization to hire an investigator, sought the services of a computer investigation specialist, and also began to file the defense motions necessary in a capital-murder case. By October, counsel obtained the trial court's authorization to hire a mitigation specialist. Appellant consulted with Drs. Joan Synesberg and James Eisenberg.
 {¶ 15} In December, 2000, as a result of both his consultation with Eisenberg and the trial court's subsequent referral of appellant to the court psychiatric clinic for an evaluation of his competency to stand trial, appellant went to a mental treatment facility. During the time of appellant's treatment, his trial counsel received the trial court's authorization to expend money to examine data contained in the victim's computer; appellant claimed evidence obtained therefrom would assist him in presenting evidence to support a lesser-included offense to the crime of aggravated murder.
 {¶ 16} By June, 2001 the parties stipulated appellant's competency had been restored. The trial court next referred him for an evaluation of his sanity at the time of the act. Appellant was evaluated at the court clinic; then, in July, the trial court also permitted him independently to be evaluated by Eisenberg. Trial was scheduled for September 17, 2001.
 {¶ 17} When appellant's case was called for trial as scheduled, defense counsel informed the trial court that Eisenberg's report, although submitted, was only "preliminary." Counsel requested a continuance in order to permit Eisenberg to conduct a "complete neuropsychological evaluation" of appellant. The trial court declined the request. It proceeded to declare, based upon the reports submitted, that appellant was both competent to stand trial and sane at the time of the act.
 {¶ 18} Next, defense counsel requested a continuance in order to process the information contained in the victim's computer. Again, the court refused, noting appellant had been in possession of the data for months.
 {¶ 19} At that point, recalling an earlier outburst by appellant at a pretrial conference, the trial court admonished appellant to "behave" in front of the jury. Before permitting the prospective jurors to enter the courtroom, however, the trial court also inquired of the parties the status of any plea discussions. The prosecutor explained the state's position. The trial court informed appellant of the potential penalties involved depending on his decision, and ascertained appellant wished to proceed to trial.
 {¶ 20} Trial proceedings recommenced the following day. It required three days to select and swear in the jurors. On the morning of September 21, 2001 defense counsel informed the court appellant had changed his mind; in exchange for an agreed sentence of life without parole rather than the potential of the death penalty, appellant would enter a plea of guilty.
 {¶ 21} The parties thereupon discussed the proper procedure to follow. Because of the necessities of filing appellant's jury waiver, impaneling three judges to decide the case, and then determining what evidence the state would be required to present, appellant's case was continued for a short time.
 {¶ 22} Proceedings went forward that afternoon. The court panel first determined appellant's waiver of his right to jury trial was knowing and voluntary. The prosecutor then set forth the plea agreement.
 {¶ 23} As stated, in exchange for appellant's plea of guilty to count one, amended to delete the repeat violent offender specification and the notice of prior conviction, the remaining counts would be dismissed. Appellant further would "stipulate that the evidence [would] be — a statement of facts [to be] given by the prosecution and that such statement [was] true and accurate and sufficient to support beyond a reasonable doubt both the offense of aggravated murder and the felony murder specification." The state, too, would stipulate that the aggravating factors did not outweigh the mitigating factors and "agree to a sentence of life without the possibility of parole." Defense counsel assured the panel the agreement had been discussed with appellant and his change of plea was both "voluntary" and factually-supported.
 {¶ 24} The panel then engaged in a colloquy with appellant. Appellant acknowledged his plea of guilty to the charge "carrie[d] a potential and agreed penalty here of life imprisonment without parole," which meant he would not be "eligible for any type of judicial release."
 {¶ 25} Before requesting appellant's plea, the panel listened to the prosecutor's recitation of the "stipulated" facts of the case. The panel also accepted into evidence as exhibits the victim's autopsy protocol, the restraining order that had been issued against appellant, and appellant's written statement. Appellant had admitted breaking into the apartment, waiting in a bedroom, hearing the victim move around the home for a few minutes before confronting her, and then stabbing the victim "quite a few times" until he was "done."
 {¶ 26} When addressed, appellant's counsel stated his belief the recitation of the facts was "tantamount to proof beyond a reasonable doubt," therefore, appellant would "stipulate to a finding of guilt." From the recitation and appellant's stipulation, the panel determined the evidence supported the offense, and accepted appellant's plea of guilty.
 {¶ 27} The panel thereupon proceeded to sentencing. The parties stipulated to the agreed sentence; nevertheless, prior to addressing appellant, the panel listened to defense counsel, a member of the victim's family, and appellant himself. The panel noted the circumstances surrounding the offense, commented that appellant's actions were "depraved," and pronounced the agreed sentence of life imprisonment without the possibility of parole.
 {¶ 28} Appellant presents the following assignments of error through appellate counsel:
 {¶ 29} "1. The appellant was denied due process of law when the appellant did not make a voluntary, knowing, and intelligent waiver of his constitutional rights at the plea hearing.
 {¶ 30} "2. The trial court denied the appellant his due process rights when it failed to take evidence, deliberate or make a determination about the appropriateness of the charge.
 {¶ 31} "3. The trial court denied appellant due process of law when it participated in plea negotiations.
 {¶ 32} "4. The trial court denied the appellant due process of law when it refused to continue the trial without completing a psychological evaluation and downloading computer images form (sic) the victim's computer.
 {¶ 33} "5. The trial court denied the appellant due process of law when it failed to consider lesser possible sentences for aggravated murder.
 {¶ 34} "6. The trial court erred when it did not specifically find which mitigating factors it found to exist that outweighed the mitigating (sic) factors."
 {¶ 35} Appellant argues in his first assignment of error the panel failed to comply with the requirements of Crim.R. 11(C) before accepting his plea by neglecting to explain certain constitutional rights afforded him. Appellant's argument, however, is belied by the record.
 {¶ 36} The transcript of the plea hearing demonstrates that the panel strictly complied with its duty to inform appellant of the constitutional rights he would be relinquishing upon entering his plea.State v. Hughes, Cuyahoga App. No. 81019, 2003-Ohio-166. Since the record reflects the panel explained to appellant the consequences of his plea in a "reasonably intelligible manner," appellant's first assignment of error is overruled. State v. Ballard (1981), 66 Ohio St.2d 473; State v.Rakoczy (Mar. 28, 2002), Cuyahoga App. Nos. 79998, 79999; State v.Perkins (June 22, 2000), Cuyahoga App. No. 76321.
 {¶ 37} Appellant next argues in his second assignment of error that the panel improperly accepted his plea. He asserts the panel was required to take testimony and specifically deliberate the adequacy of that evidence on the record to determine whether he killed the victim with prior calculation and design. Appellant's argument remains unpersuasive.
 {¶ 38} The Ohio Supreme Court has permitted stipulated evidence to take the place of direct testimony when both the state and the defense have agreed to the procedure. State v. Green, 81 Ohio St.3d 100, 104,1998-Ohio-454, citing State v. Post (1987), 32 Ohio St.3d 380. In this case, both the prosecutor and defense counsel not only stipulated to the prosecutor's statement of the evidence, but also separately stipulated the evidence proved the element of prior calculation and design. Appellant had threatened the victim, broken into their home despite his awareness of the restraining order, waited for her, and heard her moving around in the apartment for some minutes before confronting her and stabbing her 99 times with 5 different knives. State v. Cotton (1978), 56 Ohio St.2d 8, paragraph three of the syllabus.
 {¶ 39} Moreover, prior to accepting appellant's plea, the panel discussed the adequacy of the proof of appellant's guilt of the crime of aggravated murder. It subsequently also made separate findings on the record that appellant was guilty of both the crime and the specification attached to count one of the indictment. In its journal entry, it further expressly stated it had "considered" the evidence in making its findings.
 {¶ 40} As the result of the foregoing, this court cannot agree the panel's actions were constitutionally infirm. Appellant's second assignment of error, accordingly, is overruled.
 {¶ 41} In his third assignment of error, appellant asserts the original trial court improperly intruded into the plea agreement process. He contends the effect of the trial court's comments was to render his plea involuntary because he was led to believe he would not receive a fair trial.
 {¶ 42} In context, however, the comments appellant now challenges were made to ensure appellant fully was cognizant of the potential consequences of his rejection of the offer put to him by the state. The trial court's comments, when considered with the circumstances surrounding the crimes and the proceedings held thus far, therefore, were not inappropriately intrusive. State v. Harris (May 27, 1999), Cuyahoga App. Nos. 74194-74197. Accordingly, appellant's third assignment of error also is overruled.
 {¶ 43} Appellant argues in his fourth assignment of error that the original trial court compromised his right to due process of law by refusing to grant him a continuance to obtain additional defense evidence. This contention lacks merit.
 {¶ 44} Appellant's plea of guilty to the charge and the specification operated as a waiver of his claim of error. In Huber Hts.v. Duty (1985), 27 Ohio App.3d 244, the court cited Menna v. New York
(1975), 423 U.S. 61 for the following observation:
 {¶ 45} "A guilty plea * * * simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established. * * *"
 {¶ 46} Since appellant admitted his guilt of the crime of aggravated murder with prior calculation and design, he waived any claim that a continuance would have permitted him to obtain mitigating evidence of his guilt. Consequently, his fourth assignment of error is rejected.
 {¶ 47} Appellant's fifth and sixth assignments of error challenge the panel's imposition of sentence upon him.
 {¶ 48} Appellant first argues the panel was required to consider "all the possible sentences on the record" before imposing the agreed sentence. Appellant presents no authority to support this argument; therefore, his fifth assignment of error is overruled. App.R. 12(A)(2); App.R. 16(A)(7); Foster v. Bd. of Elections (1977), 53 Ohio App.2d 213, headnote six.
 {¶ 49} Appellant further argues the panel was required to detail which mitigating factors it found applicable prior to imposing the agreed sentence. The record reflects, however, that the panel several times informed appellant the agreed sentence of life imprisonment without parole, rather than death, was a major term of the plea agreement, and then considered the evidence before expressly determining the agreed sentence was appropriate. State v. Perkins, supra; State v. Rakoczy,
supra.
 {¶ 50} Under these circumstances, the panel's actions did not violate R.C. 2929.03(D), which applies only to cases in which the death penalty is imposed. Therefore, appellant's sixth assignment of error lacks merit and, accordingly, also is overruled.
 {¶ 51} Appellant presents the following additional assignment of error pro se:
 {¶ 52} "Trial counsels (sic), John Carson and John Gibbons, provided ineffective assistance of counsel where the State's case was not subjected to an adversarial test, denying the Appellant his due process. Art. 1, [Sec.] 10, Ohio Constitution; Sixth Amendment, United States Constitution."
 {¶ 53} Appellant argues his trial counsel rendered constitutionally ineffective assistance when, as a part of the plea process, they withdrew their defense motions. He contends that, despite his decision to enter a guilty plea to an amended count one of the indictment, counsel nevertheless first should have more diligently subjected the state's case to the adversarial process in order to determine whether he was guilty instead of only a lesser-included offense. Appellant's assignment of error lacks merit. Appellant not only admitted his guilt to the crime of aggravated murder with prior calculation and design, but nothing in the record supports appellant's argument. State v. Wenson (July 19, 2001), Cuyahoga App. No. 78522.
 {¶ 54} Instead, the record reflects trial counsel thoroughly had prepared for appellant's capital trial. They had filed numerous defense motions, obtained psychological reports, hired an investigator, and, additionally, had the advantage of many months of familiarity with appellant's case. The record further reflects trial counsel fully were ready to take the case to trial, even completing the three-day process of jury selection.
 {¶ 55} Appellant, however, at his last opportunity to do so, decided to enter a plea. He stated his decision was based upon his discussions with his family members, as well as his consultations with his attorneys. Thereafter, appellant's attorneys informed the panel of their professional assessment that the state's evidence proved appellant's guilt beyond a reasonable doubt.
 {¶ 56} Based upon the record before this court, appellant thus cannot demonstrate his trial counsel rendered ineffective assistance.State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 57} Accordingly, his additional assignment of error presented pro se also is overruled.
 {¶ 58} Appellant's conviction and sentence are affirmed.
DIANE KARPINSKI, J. and ANTHONY O. CALABRESE, JR., J. concur.