## In re HINKO.

[Cite as *In re Hinko* (1992), 84 Ohio App.3d 89.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61394.

Decided Nov. 30, 1992.

*Joseph M. Lhota,* for appellants.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Kenneth Lusnia* and *Ralph Kolasinski,* Assistant Prosecuting Attorneys, for appellee state of Ohio.

*Mary Cay Tylee* and *David M. King,* Assistant Public Defenders, for appellee Michael Hinko.

FRANCIS E. SWEENEY, Senior Judge.

Appellants, Paul and Maureen Hinko, timely appeal from the decision of the common pleas court, juvenile division, which, in pertinent part, ordered "upon child's [Michael P. Hinko, son of appellants'] release from the Youth Development Center, that said child is to reside at home or with another court-approved guardian until he reaches twenty-one and the family is to be fully responsible for the child's support." Appellants further appeal that portion of the juvenile court's decision which ordered "that the Public Defender's Office is to prepare a bill at the hourly rate of $100.00 and present said bill to the court to be presented to the parents to be paid by them forthwith, under penalty of contempt." For the reasons that follow, we affirm in part, reverse in part, and remand this cause for further proceedings consistent herewith.

The facts giving rise to this appeal are as follows.

On September 16, 1990, Michael Hinko, age seventeen, and Eric Goodwin entered the North Olmsted High School and set fire to the school, causing extensive damage therein. Ten days later, Michael Hinko turned eighteen years old. On October 4, 1990, a complaint was filed against Michael in the Juvenile Court of Cuyahoga County, charging him with breaking into and setting fire to the North Olmsted High School. An arraignment was held the next day. Michael signed an affidavit of indigency and a guardian *ad litem* was appointed. Appellants were not present at the arraignment, but attended all subsequent hearings. On October 25, 1990, a probable cause hearing was held, and on November 27, 1990, an amenability hearing was held. At a hearing on December 20, 1990, Michael was found amenable to the juvenile justice system, and pleaded delinquent to the acts alleged in the complaint. Finally, the dispositional hearing was held on January 15, 1991, wherein the juvenile court, for the first time on record, addressed appellants. At no time prior thereto did the court address appellants or inform them of their status as parties to the action, Juv.R. 2(16), or advise them of their right to counsel. R.C. 2151.352; Juv.R. 4(A); and Juv.R. 29(B)(3).

The judgment appealed from was thereafter entered on January 28, 1991. However, this court remanded this case to the trial court for further hearings on the issue of Michael's residence until he reaches age twenty-one. After a hearing, the trial court entered an order wherein Michael would be placed at "Cleveland Crossroads for Youth/Agape Program for semi-independent living." The trial court further ordered "Cuyahoga County to pay full cost of care of said child while in placement as it becomes due and owing. Father's ability to pay for the cost of this case having been determined, it is ordered that the father pay into Court $558.96 per month, which includes 2% poundage, which as it becomes due

and owing is to go to the Treasurer of Cuyahoga County, Ohio, to reimburse in part according to the father's ability to pay Cuyahoga County, Ohio for the cost of said care."

This appeal follows, wherein appellants raise the following two assignments of error for our review:

"I.  The trial court erred in ordering that until Michael Hinko reaches the age of twenty-one his family is to be fully responsible for his support.

"II.  The trial court erred in ordering the parents of Michael Hinko to pay a bill prepared by the public defender's office for the representation of Michael Hinko."

In the above two assignments of error, appellants argue that their rights, privileges and responsibilities for Michael ceased on September 26, 1990 when Michael reached the age of majority.  Therefore, they argue, they cannot be held responsible for his support and legal bills incurred after he became an adult.  We overrule appellants' first assignment of error and sustain their second.

■  Relevant to the present case, the trial court's order committed Michael to the Youth Development Center in Hudson, Ohio, and, upon his release therefrom, appellants were to be fully responsible for his support.  Appellants argue that pursuant to R.C. 3109.01,[1] Michael can no longer be considered a minor.  We note, further, that R.C. 3103.03 provides in pertinent part that a "biological or adoptive parent must support his or her minor children out of his or her property or by his or her labor."  Conversely, in the absence of a statutory provision to the contrary, the duty of a parent to support a child ends when the child reaches the age of majority.  *Castle v. Castle* (1984), 15 Ohio St.3d 279, 282, 15 OBR 413, 415, 473 N.E.2d 803, 806.

Therefore, this court must ascertain whether a statutory provision authorizes the juvenile court to hold appellants responsible for Michael's support and legal bills incurred after Michael attained the age of majority.  Appellee argues that the definitions of "child" as contained in R.C. 2151.011(B)(1)[2] and the statutory framework contained in R.C. 2151.355 and 2151.36 permit the juvenile court to

---

1.  R.C. 3109.01 provides:

"All persons who are of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes."

2.  R.C. 2151.011(B)(1) defines "child" as:

"[A] person who is under the age of eighteen years, except that any person who violates a federal or state law or municipal ordinance prior to attaining eighteen years of age shall be deemed a 'child' irrespective of his age at the time the complaint is filed or hearing had on the complaint * * *."

treat Michael as a delinquent child and place him in the custody of a county agency while requiring the appellants to provide for his support.

■ It is undisputed that the juvenile court properly committed Michael into the custody of the Youth Development Center pursuant to R.C. 2151.355. Moreover, R.C. 2151.36 provides in pertinent part that "[w]hen a child has been committed as provided by this chapter, the juvenile court may make an examination regarding the income of the parents * * *, and may then order that the parent * * * pay for the care, maintenance, and education of the child * * *." In applying the definition of the word "child" as found in R.C. 2151.011(B)(1), which includes a person who violates a federal or state law prior to attaining eighteen years of age, we conclude that R.C. 2151.36 provides the juvenile court with authority to hold appellants responsible for Michael's support.

Accordingly, we find that R.C. 2151.011(B)(1) and 2151.36, when read together, create statutory authorization which overrides the common-law rule that the duty of the parent to support a child ends when the child reaches the age of majority.

■ Appellants additionally argue that the juvenile court's order committing Michael to the Youth Development Center relieves them of all obligations to support Michael. R.C. 2151.011(B)(14) states that " '[c]ommit' means to vest custody as ordered by the court." Moreover, under R.C. 2151.011(B)(10), "legal custody" is defined as:

"[A] legal status created by court order which vests in the custodian the right to have physical care and control of the child and to determine where and with whom he shall live, and the right and duty to protect, train, and discipline him and to provide him with food, shelter, education, and medical care, *all subject to any residual parental rights, privileges, and responsibilities.* An individual granted legal custody shall exercise the rights and responsibilities personally unless otherwise authorized by any section of the Revised Code or by the court."

Finally, "residual parental rights," "privileges" and "responsibilities" are defined in R.C. 2151.011(B)(11) as:

"[T]hose rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including but not necessarily limited to the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, *and the responsibility for support.*"

Accordingly, residual parental rights, privileges and responsibilities, including the responsibility of support, remain with appellants notwithstanding the juvenile court's order committing Michael to the Youth Development Center. Appellants' reliance on *N. Columbiana Cty. Community Hosp. Assn. v. Ohio Dept. of Youth*

*Serv.* (1988), 38 Ohio St.3d 102, 526 N.E.2d 802, is misplaced. The above-cited case pertains to youth who are committed to the Department of Youth Services and the responsibility of the department under R.C. 5139.01(A)(3), when such youth are placed in the department's custody and are injured while absent without leave from an institution where the youth are residents. In the present case, Michael was committed to the Youth Development Center, which is not governed by R.C. 5139.01(A)(3). Moreover, in *Community Hosp.*, the Supreme Court was concerned with the exception for residual parental rights as found in R.C. 2151.011(B)(11) subsuming the rule that the department was responsible for youths committed to it. However, in the present case, the juvenile court is statutorily permitted to place responsibility for the support of a child on the parents pursuant to R.C. 2151.36. Therefore, *Community Hosp.* is easily distinguishable from the present case.

Appellants further contend that to require them to support Michael pursuant to the court order, they would be forced to assume parental responsibilities without any parental rights and privileges. Appellants argue that while they would be responsible for Michael's support, they would have no ability to enforce visitation should Michael choose not to see them, nor would they have the right to consent to an adoption or enforce their religious preferences as to Michael's religious affiliation, since Michael is now considered a "man" pursuant to R.C. 3109.01. While these arguments may have some merit, we choose not to address them inasmuch as they are not ripe for this court's review. Moreover, we would expect *the juvenile court below to take these considerations into account in the exercise of its continuing jurisdiction.*

Accordingly, for the reasons stated above, appellants' first assignment of error is overruled.

■ In appellants' second assignment of error, they argue the juvenile court erred by failing to advise them of their status as parties to the proceedings and of their right to counsel. As a result, appellants argue, the process began to steamroll against them and culminated with the trial court's ordering the public defender's office to submit a bill to appellants for Michael's legal fees at a rate of $100 per hour. This argument has merit.

Not only does Juv.R. 4(A) provide that "[e]very party shall have the right to be represented by counsel," but R.C. 2151.352 provides, in pertinent part:

"A child, *his parents,* custodian, or other person in loco parentis of such child *is entitled to representation by legal counsel at all stages of the proceedings* and if, as an indigent person, he is unable to employ counsel, to have counsel provided for him pursuant to Chapter 120. of the Revised Code. *If a party appears without counsel, the court shall ascertain whether he knows of his right to*

*counsel and of his right to be provided with counsel if he is an indigent person."* (Emphasis added.)

██ In the present case, appellants were present at all stages of the proceedings except for the original arraignment. Further, with the exception of the final hearing wherein the juvenile court rendered its decision, appellants were not represented by counsel, nor does it appear from the record that the trial court ever ascertained whether appellants knew of their right to counsel. Finally, we note that it was not until the final hearing that the trial court even addressed the parents on the record. At this hearing, and after the trial court had reached numerous conclusions about appellants' fitness as parents, the court finally heard from appellants' counsel, who voiced his concern over the court's order which would have potentially placed Michael back in appellants' home upon his release from the Youth Development Center. The trial court, then, took unsworn testimony from Mr. Hinko concerning his income and, after referring to appellants as "mooches" and "cheap," issued the order requiring the public defender's office to present a legal bill to appellants for Michael's defense at a rate of $100 per hour. Finally, we note the juvenile court later conducted a hearing to ascertain appellants' ability to pay Michael's attorney fees, and found appellants had the ability. However, considering the trial court's previous characterization of appellants without having advised appellants that they have a right to counsel and at least advising appellants that they have a right to be heard at any of the previous hearings, we find appellants' second assignment of error to have merit. Moreover, we add that the juvenile court must base its determination of reasonable attorney fees upon actual value of the necessary services performed, that there must be some evidence which supports the court's determination, and that, in making such a determination, time spent by the attorneys and a reasonable rate to be charged for that time are important factors to be considered by the court. See *Hlavin v. W.E. Plechaty Co.* (1971), 28 Ohio App.2d 43, 57 O.O.2d 69, 274 N.E.2d 570; *Hermann, Cahn & Schneider v. Viny* (1987), 42 Ohio App.3d 132, 537 N.E.2d 236. The record does not disclose whether these considerations were taken into account by the juvenile court.

Accordingly, appellants' second assignment of error is sustained.

*Judgment affirmed in part,*
*reversed in part, and cause remanded*
*for further proceedings consistent with*
*this opinion.*

MATIA, C.J., and NAHRA, J., concur.