**J. LEWIS MADORSKY CO.,
L.P.A., Plaintiff,**

v.

**R.J. NOLAN, et al., Defendants.**

No. 1:96–CV–2559.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 27, 1998.

946

Andrew Agati, Kelley, McCann & Livingstone, Cleveland, OH, for Plaintiff.

J. Lewis Madorsky, Law Offices of J. Lewis Madorsky & Co., Cleveland, OH, pro se.

Dennis J. Weipert, Plofchan & Weipert, Sterling, VA, for Defendants.

## MEMORANDUM OPINION

GWIN, District Judge.

On December 31, 1997, Plaintiff J. Lewis Madorsky filed a motion for default judgment or summary judgment [Doc. 25]. Defendants R.J. Nolan and Tannol Holdings have filed no opposition.[1] In his motion, Plaintiff Madorsky seeks judgment against Defendants for the reasons that (1) Defendants have yet to answer Plaintiff's complaint filed with the Court on November 11, 1996,[2] and (2) Defendants have failed or neglected to pay Plaintiff Madorsky for services rendered. For the reasons that follow, the Court grants Plaintiff's motion for summary judgment against Defendants R.J. Nolan and Tannol Holdings, Ltd., in the amount of $200,000.00, plus interest.

### I

For several years, Defendants have contracted with Plaintiff Madorsky to provide legal services. The project that is the subject of this litigation required Plaintiff to be extensively involved in the construction of an electrical power plant in Tanzania, Africa ("Power Plant Project"). Plaintiff's principal role was to manage all legal aspects of the deal.[3] The bulk of the work on the Power

---

1. Pursuant to this Court's case management plan and trial order dated December 18, 1997 [Doc. 23], the cut-off for filing responses to dispositive motions was January 15, 1998, with any reply to opposition due on January 20, 1998. Defendants herein have failed or neglected to timely file any response to Plaintiff's motion for default or summary judgment.

2. This cause was removed from the Cuyahoga County Court of Common Pleas to the United States District Court for the Northern District of Ohio on November 27, 1997. Removal was premised on diversity of citizenship.

3. The Power Plant Project was a $450,000,-000.00 transaction and it required Plaintiff to prepare numerous documents, including an operation and maintenance agreement between De-

Plant Project spanned the six to seven-month period from November 1994 to May 1995. During this time, Plaintiff Madorsky claims to have worked more than 1,500 hours on this project.[4]

Madorsky contends that he has repeatedly asked Defendants to remit payment for the services he provided on the Power Plant Project. To date, no payment has been received.

## II

Plaintiff Madorsky asserts three claims. First, Plaintiff states Defendants R.J. Nolan and Tannol Holdings have failed to pay him legal fees in the amount of $200,000.00, plus interest. Second, Madorsky contends that Defendants failure to pay constitutes a breach of contract for which he is entitled to damages. Third, Madorsky says that Defendants have been unjustly enriched by contracting for legal services yet failing to remit any payment to him for those services.

Plaintiff Madorsky gives evidence that Defendants R.J. Nolan and Tannol Holdings have failed to compensate him for work done under contract. Defendants fail to give any cognizable evidence in opposition.

## III

The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides in part that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Ad-*

*ickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Summary judgment is not proper if there is a material dispute over the facts, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). See also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The purpose of summary judgment is to pierce the allegations set forth in the pleadings and to permit consideration of the dispute's merits at an early stage of the proceedings. When a movant has supported a motion for summary judgment with cognizable evidence, Rule 56(e) requires an opposing party to not rest upon the mere allegations, but to respond with evidence showing that genuine issues of fact exist, or summary judgment, if appropriate, shall enter against him.

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this test, the moving part may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party cannot rest on its pleadings, but must identify facts supported by affida-

---

fendants and the Government of Tanzania; investment guarantees between Bankers Trust and Defendants; a 220 page power purchase agreement between Defendants and the Government of Tanzania; engineering design contracts; a strategic partnership agreement with General Electric; substation suppliers and financing agreements; Tanzanian Harbor Authority lease

agreements; and cash flow models and income pro formas.

4. Plaintiff frequently traveled in order to negotiate with electrical plant engineers, the General Electric Company, the U.S. Government and with institutional lenders both in the United States and the United Kingdom.

vits, or by depositions, answer to interrogatories, and admissions on file that show there is a genuine issue for trial. *Id.* at 324. Although we must draw all inferences in favor of the nonmoving party, it must present significant and probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### IV

The facts of this case clearly establish that Defendants R.J. Nolan and Tannol Holdings have failed to compensate Plaintiff Madorsky for legal services done under contract. As such, Defendants are liable for breach of contract.

Accordingly to the sworn affidavit of Plaintiff Madorsky, Plaintiff was contacted in his Cleveland, Ohio offices by Defendants to work on many projects proposed by Defendants. One of the first projects required Plaintiff's participation in a one week hearing in Tanzania, Africa, in which Plaintiff worked approximately thirty hours on behalf of Defendants. Plaintiff states that Defendants paid him $5,500.00 for this work.

Plaintiff also gives evidence that Defendants sought his advice and services throughout the years 1994 and 1995 concerning the Power Plant Project. In a letter dated December 8, 1994, attached as Exhibit 2 to Plaintiff Madorsky's affidavit, it is clear that Defendants engaged Madorsky for legal services. In this letter, Managing Director of Tannol Holdings, Ltd., writes to Madorsky and others the following:

> The following report has been submitted to Government in relation to out proposal. We would like your input and advice in dealing with the points they raise. Please fax your comments to John Nolan's fax number 75441 this evening or tomorrow as we meet with the Government Parties on Saturday.

This letter was sent to Plaintiff Madorsky on Tannol Holdings letterhead and directed Plaintiff to forward any comments by fax to John Nolan.

Plaintiff also gives evidence of a second letter, dated January 5, 1995, again from Eugene O'Neill and again on Tannol Holdings letterhead. This letter was written only to Plaintiff "Jay Madorsky" and read:

> I refer to my fax of 6th January reference articles 1(fo) [sic] and 1(g) of the PPA. Can you please amended these clauses to reflect that the lease of the land by the producer from Tanzania will be for an annual rent of U.S. $1.00 per year for a period of as long as the plant is capable of operation plus a further grace period of 5 years. . . .

There were also several hand written notes to "Jay" on the face of this letter, presumably by Mr. O'Neill.

Plaintiff gives evidence of a third letter sent to him by Eugene O'Neill, dated February 7, 1995. This letter clearly seeks Plaintiff Madorsky's legal advice.

> Thank you for your draft fuel supply contract and the draft of O + M contract. As you know, we are submitting comprehensive documents to the Ministry of Minerals, Water and Energy tomorrow. The one matter that we must deal with is the availability of the GE Gas turbine because, as you know, Hutton & Williams have told the GOT that this turbine is no longer available to us for the Tanzanian project. Can you please advise how we handle this.

This letter further gives evidence that Plaintiff Madorsky routinely performed other services for Defendants (such as drafting the above referenced "fuel supply contract").

Neither of the Defendants herein have responded to Plaintiff's motion for default or summary judgment, nor has either Defendant given any evidence to contradict that they engaged Plaintiff to provide legal advice and services.

### V

■ In his first and second claims for relief, Plaintiff Madorsky contends that Defendants are in breach of contract and thus liable for unpaid legal fees in the amount of

$200,000.00. In the instant case, Plaintiff successfully establishes a case for breach of contract.

■ A contract for legal services, whether written or oral, is like any other contract. One party requests another party to perform services for which the performing party expects to get paid. See *Baer v. Woodruff, et al.*, 111 Ohio App.3d 617, 618, 620–621, 676 N.E.2d 1195 (10th Dist.1996) (awarding damages for non-payment of legal services pursuant to an oral contract). In the instant case, Plaintiff Madorsky has given evidence that he performed certain legal services for Defendants. Plaintiff has also given evidence that despite repeated requests for payment, Defendants have failed to remit payment to Madorsky.

It is clear from the evidence presented that Defendants engaged Madorsky for legal advice and services regarding the Power Plant Project in Tanzania, Africa. It is also evident that neither Defendant R.J. Nolan or Tannol Holdings have yet paid Madorsky for his services. Defendants' actions in this regard constitute a material breach of contract. Accordingly, based upon the evidence discussed herein, the Court grants summary judgment for Plaintiff Madorsky on his breach of contract claim.

■ As a general rule, an attorney's compensation for services rendered is normally fixed by contract prior to employment and the formation of the attorney/client relationship. *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App.3d 313, 323, 653 N.E.2d 1245 (10th Dist.1995); *Jacobs v. Holston*, 70 Ohio App.2d 55, 59, 434 N.E.2d 738 (6th Dist.1980). However, if the attorney and client agree on the attorney's hourly rate and a retaining fee, but not on the number of hours to be expended, as appears to be the case here, the attorney seeking payment carries the burden in an action for attorney fees of proving that he fairly and properly used the expended time,

and moreover, that the fees are reasonable and fair. *Id.*

■ To determine what fees are owed, a trial court is required to calculate reasonable attorney fees based upon the actual value of the necessary services performed by the attorney, with evidence in existence in support of the court's determination. *Climaco*, Ohio App.3d at 323. See also *In re Hinko*, 84 Ohio App.3d 89, 95, 616 N.E.2d 515 (8th Dist.1995).[5] A court should then calculate the number of hours reasonably expended and multiply that sum by a reasonable hourly fee. See *Bittner v. Tri–County Toyota*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991).

■ In this case, the Court finds that there is sufficient evidence to find Defendant liable to Plaintiff for payment of all *reasonable fees* earned to date for Plaintiff's work on the Power Plant Project. The Court also finds that Plaintiff has provided sufficient evidence to indicate that the rate of $200.00 per hour is a reasonable fee given prior dealings between these parties.

In his affidavit, Plaintiff Madorsky states that on a previous occasion, Defendants paid him $5,500.00 for approximately 30 hours of work. Computing this to a fixed hourly rate yields a fee of $183.33 per hour. In his motion, Plaintiff seeks payment from Defendants for at least $200,000.00. Plaintiff says this figure represents approximately 1,500 hours of work for Defendants at a rate of $200.00 per hour, that has not been paid.

Given that the Defendants have paid Madorsky at an equivalent rate in the past, and given that the nature of Plaintiff's work was generally complex in nature, the Court finds that Plaintiff's request for fees payable at a rate of $200.00 per hour is reasonable. Furthermore, Defendants have filed no opposition to Plaintiff's claim and there is no evidence in the record that Defendants were

**5.** Factors to be considered by a court when determining the reasonable value of attorney fees were set forth in *Pyle v. Pyle*, 11 Ohio App.3d 31, 463 N.E.2d 98 (8th Dist.1983):

1) [t]ime and labor, novelty of issues raised, and necessary skill to pursue the course of action; 2) customary fees in the locality for similar legal services; 3) result obtained; and 4) experience, reputation and ability of counsel. . . .

*Pyle*, 11 Ohio App.3d at 35, 463 N.E.2d 98.

dissatisfied with Madorsky's services.[6]

## VI

 In his third claim for relief, Plaintiff Madorsky argues, alternatively, that he is entitled to relief under the doctrine of unjust enrichment or quantum meruit. In this regard, Madorsky says that the value of his work is at least worth $200,000.00. Plaintiff says this represents only about .04% of the total value of the Power Plant Project.

 Unjust enrichment is an equitable doctrine and infers, at law, a promise to pay the reasonable value of services rendered where one party confers a benefit upon another without receiving just compensation for those services. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.,* 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989). The doctrine is derived from the natural law of equity, the basic idea of which is that no one should be unjustly enriched who benefits from the services of another. In order to prevent unjust enrichment, the law infers a promise to pay a reasonable amount for the services rendered and even for materials furnished, in the absence of a specific contract. *Sonkin & Melena Co., L.P.A. v. Zaransky* 83 Ohio App.3d 169, 175, 614 N.E.2d 807 (8th Dist.1992) (citing *Swiftships, Inc. v. Burdin,* 338 So.2d 1193, 1195 (La.App.1976)).

 The essential elements needed for recovery under quantum meruit or unjust enrichment are: "(1) Valuable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged." *Sonkin,* 83 Ohio App.3d at 175, 614 N.E.2d 807 (quoting

*Montes v. Naismith & Trevino Constr. Co.,* 459 S.W.2d 691, 694 (Tex.Civ.App.1970)). See also *Thomas & Boles v. Burns,* 1994 WL 110950 *6 (Ohio App. 8th Dist. March 31, 1991).

In the instant case, Plaintiff Madorsky alleges that he has performed specific legal services at the direction and to the benefit of Defendants and has not received full payment for those services. Plaintiff gives evidence of several letters written by Defendants procuring Plaintiff's legal services. These letters represent express agreements between the parties to enter into a contract. Although the letters do not set forth a payment plan for Plaintiff's services, they do create sufficient proof of an implied agreement that Plaintiff will be compensated for his work. Plaintiff has given further evidence to support that it is the custom and practice between these parties to transact business through correspondence in this manner.

Wherein Defendants have failed to give any evidence to contradict Plaintiff's claims, the Court finds that Plaintiff Madorsky has presented sufficient evidence that (1) Plaintiff rendered valuable services, (2) to Defendants R.J. Nolan and Tannol Holdings, Ltd., (3) which services were accepted, used and enjoyed by these Defendants, and (4) under circumstances whereby Plaintiff has informed the Defendants that in performing these legal services, he was expecting to be paid. In this regard, Plaintiff Madorsky successfully establishes a claim for unjust enrichment. Accordingly, the Court grants summary judgment for Plaintiff on this claim.

For the reasons set forth above, the Court finds that Plaintiff J. Lewis Madorsky is entitled to summary judgment as a matter of law.

---

**6.** "The general rule is that expert testimony regarding the reasonableness of the fees is not required when a client does not make any attempt to contact the attorney during the attorney/client relationship to express dissatisfaction with the legal services rendered or the amount of money owed, and the attorney kept the client appraised of the status of the legal matter. See *Climaco; Hermann, Cahn & Schneider v. Viny,* 42 Ohio App.3d 132, 537 N.E.2d 236 (8th Dist. 1987). It, therefore, follows that if a client expresses dissatisfaction with their attorney's services or the amount of money owed, expert testimony is required to establish the reasonableness of the fees." *Stafford & Assocs. v. Skinner,* 1996 WL 631112, *6 (Ohio App. 8 Dist., October 31, 1996).

An appropriate order shall enter.

IT IS SO ORDERED.