[Cite as *In re C.D.*, 2017-Ohio-5870.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In re: | : | |
| C.D., | : | No. 16AP-779<br>(C.P.C. No. 15JU 2597) |
| (N.D., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |
| In re: | : | |
| C.D., | : | No. 16AP-784<br>(C.P.C. No. 15JU 2597) |
| (C.D., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |

D E C I S I O N

Rendered on July 18, 2017

**On Brief:** *David Greer*, for appellant N.D. **Argued:** *David Greer.*

**On Brief:** *Laura Helmbrecht*, for appellant C.D. **Argued:** *Laura Helmbrecht.*

**On Brief:** *Robert J. McClaren*, for appellee Franklin County Children Services. **Argued:** *Robert J. McClaren.*

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

HORTON, J.

{¶ 1} Appellants N.D. ("Mother") and C.D. ("Father") appeal from the decision and judgment entry of the Juvenile Branch of the Franklin County Court of Common Pleas ("juvenile court") ordering them to pay child support under R.C. 2151.36 to Franklin

County Children Services ("FCCS") for their daughter, C.D. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}   A delinquency complaint filed on March 2, 2015 alleged that C.D., a minor, had committed domestic violence under R.C. 2919.25(A) and assault under R.C. 2903.13(A) by attempting to strike her mother in the face. (Mar. 2, 2015 Compl.) A magistrate entered a temporary order of custody ("TOC") on March 13, 2015, granting temporary custody of C.D. to FCCS. (Mar. 13, 2015 Entry.)

{¶ 3}   The magistrate held an adjudicatory hearing on May 4, 2015. A judgment entry filed on May 13, 2015 reflected that the magistrate dismissed the charge of domestic violence and amended the assault charge to the lesser included offense of disorderly conduct under R.C. 2917.11. C.D. admitted to the disorderly conduct charge and was adjudicated delinquent. The magistrate terminated the TOC and issued an order of temporary court custody ("TCC"), under which C.D. was temporarily committed to the custody of FCCS pursuant to R.C. 2151.353(A)(2). (May 13, 2015 Judgment Entry.)

{¶ 4}   On June 30, 2015, FCCS filed a motion under R.C. 2151.33 and 2151.36, seeking an order of child support for C.D. from her parents. (June 30, 2015 Motion.) The juvenile court subsequently appointed attorneys to represent Mother and Father. (Aug. 24, 2015 Entry; Aug. 27, 2015 Entry.)

{¶ 5}   Attorneys for Mother and Father filed motions to dismiss FCCS's motion for support. Both parents argued that the request for support was not authorized by statute, was untimely, and that the juvenile court had failed to appoint them counsel during C.D.'s delinquency proceeding before it issued the TCC. (Nov. 19, 2015 Motion; Nov. 20, 2015 Motion.)

{¶ 6}   After a hearing, the magistrate denied the parents' motions and granted the motion for support. Mother was ordered to pay $240.01 per month in child support and Father was ordered to pay $320.38 in child support, in addition to arrears, with modifications and additions if health insurance were not provided. (Jan. 15, 2016 Magistrate's Decision.) Both parents filed objections to the magistrate's decision, raising the arguments they had previously raised against the motion for support, as well as challenges to the amount of support the magistrate ordered.

{¶ 7}   The juvenile court overruled the parents' objections to the magistrate's decision to grant child support and rejected their argument that they had been improperly denied court-appointed counsel during the delinquency proceeding. However, the juvenile court did sustain their objections to the amount of child support. Applying R.C. 3119.22, the statute authorizing a deviation, and R.C. 3119.23, the statute enumerating the factors to apply to determine the amount of a deviation, the juvenile court reduced the support obligations by $100 for each parent. (Oct. 25, 2016 Decision and Judgment Entry.)

{¶ 8}   Mother and Father have appealed separately. Mother states the following assignments of error:

> [I.] The trial court denied appellant due process of law by not respecting finality, when it ruled that FCCS' support motion was timely.
>
> [II.] The trial court erred in ordering appellant to pay child support to FCCS when it failed to advise her of her right to court-appointed counsel, or right to screen for counsel, when her daughter was temporarily committed to the agency and placed in foster care.
>
> [III.] The trial court erred in ordering appellant to pay child support to FCCS when there is no specific statutory authority for a court to order a parent to pay support arising from a delinquency offense when the parent is also the victim of the offense.
>
> [IV.] The trial court abused its discretion in only granting a $100/month child support deviation, when it failed to consider all of the applicable factors in R.C. 3119.23.

{¶ 9}   Father's appeal asserts the following assignments of error:

> [I.] The trial court erred when it concluded that FCCS' motion for child support was timely.
>
> [II.] The trial court erred in failing to advise appellant of the right to counsel, or court-appointed counsel, when the court granted temporary court commitment to FCCS.
>
> [III.] The trial court erred by setting support as there is no specific statutory authority mandating a parent to pay child

support when a parent of the family is also the victim of the underlying delinquency offense.

[IV.] The trial court abused its discretion by reducing child support by only $100.00 per month as it failed to consider all of the deviation factors found in R.C. 3119.23.

{¶ 10} Because Mother and Father's assignments of error parallel each other, and their briefs present identical arguments to support them, we will consider them together in the following discussion.

## II. STANDARD OF REVIEW

{¶ 11} We review "matters concerning child support" under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989); *see also Winkler v. Winkler*, 10th Dist. No. 02AP-937, 2003-Ohio-2418, ¶ 55. An " 'unreasonable, arbitrary or unconscionable' " action by the trial court amounts to an abuse of discretion. *Booth* at 144, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## III. FIRST ASSIGNMENTS OF ERROR

{¶ 12} Mother and Father argue that the trial court erred by ruling on the motion for support because the motion was untimely under R.C. 2151.36, as FCCS filed it after the disposition in C.D.'s delinquency proceeding. Citing *Meyer v. Meyer*, 17 Ohio St.3d 222 (1985), they assert that the untimely motion violated due process because it interfered with "the principle of finality [] in child support matters." (Mother's Brief at 11.)

{¶ 13} Under R.C. 2151.36, "when a child has been committed" by the authority of the juvenile court, that court "shall issue an order * * * requiring that the parent, guardian, or person charged with the child's support pay for the care, support, maintenance, and education of the child."

{¶ 14} Mother and Father read the foregoing statute to require a child support agency "to file a motion for support at or before the time of commitment," based on its use of the word "when." (Mother's Brief at 12.) Father describes the statute's use of the word "when" as "ambiguous and confusing." (Father's Brief at 6.)

{¶ 15} "Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation. An unambiguous statute is to be applied, not interpreted." *Sears v.*

*Weimer*, 143 Ohio St. 312, 313 (1944), paragraph five of the syllabus. "Unless words are otherwise defined or a contrary intent is clearly expressed, we give words in a statute their plain and ordinary meaning." *Cincinnati Metro. Hous. Auth. v. Morgan*, 104 Ohio St.3d 445, 2004-Ohio-6554, ¶ 6. "It is not allowable to interpret what has no need of interpretation, and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning." *Slingluff v. Weaver*, 66 Ohio St. 621, 627 (1902).

{¶ 16} Here, appellants' reading of the language of the statute defies its plain meaning, which is neither ambiguous nor confusing. The phrase "*when* a child *has* been committed" simply describes a condition precedent—the child's commitment—to the statute's required action: the mandatory command that the juvenile court "shall issue an order" of support. R.C. 2151.36 (emphasis added); *see also In re Pease*, 3d Dist. No. 10-05-21, 2006-Ohio-2785, ¶ 6 (noting that R.C. 2151.36 "includes mandatory language" and "requires the trial court to order the parents to pay the expenses of committing the child to state care."). Furthermore, the plain language of the statute defeats appellants' contention that the agency must file a motion for support *before* the child has been committed because, as noted, the child's commitment is a condition precedent to the juvenile court's authority to issue the support order.

{¶ 17} In fact, R.C. 2151.36 is silent regarding the process for requesting the child support order from the juvenile court. The statute provides a remedy for the state once it has assumed the custody and care of a child, namely "the probability that the state may be able to recoup some of the funds which have already been expended in support of the child," and authorizes the juvenile court to order the remedy. *In re Thornburg*, 10th Dist. No. 98AP-466 (Jan. 26, 1999). However, it imposes no limitation or deadline on the filing of a motion for support. This is logical, as the expenses to support a committed child continue to accrue while it is in the custody of the state. Given the absence of any such limitation, the juvenile court committed no error when it considered the motion for an order of support that FCCS filed approximately six weeks after the TCC.

{¶ 18} Mother's assignment of error also asserts that the trial court violated her right to due process by ruling that the motion for support was timely. Under App.R. 16(A)(7), an argument in an appellate brief must present "the contentions of the appellant

with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." There is no development of this asserted constitutional violation in the arguments in her brief. Without "minimum compliance with the appellate rules, neither the appellee nor the appellate court can reasonably respond to the claim." *Foster v. Cuyahoga Cty. Bd. of Elections*, 53 Ohio App.2d 213, 228 (8th Dist.1977); *see also Wing Leasing, Inc. v. M & B Aviation, Inc.*, 44 Ohio App.3d 178, 185 (10th Dist.1988) (declining to consider a "sparse, if practically nonexistent" argument that was "plainly inadequate" to support an assignment of error).

{¶ 19} The only possible reference in appellants' arguments to a due process violation is the assertion that the trial court violated "the principle of finality" when it allowed FCCS to file the motion for child support after it had issued the TCC. Both Mother and Father cite *Meyer* in support of this argument. (Mother's Brief at 11; Father's Brief at 7.) However, there was no consideration of any constitutional issue in *Meyer*.

{¶ 20} In *Meyer,* the Supreme Court of Ohio held that a custodial parent was not entitled to an retroactive order of reimbursement for nearly two years of child support from the father "where no support order was made or requested at the time she received custody of the parties' minor children." *Id.* at 223. The mother filed a motion for retroactive support two and one-half years after receiving custody of one son and two years after receiving custody of another. *Id.* at 222. Custody of one son had reverted to the father two months before filing the motion. *Id.* The mother had failed to file a motion for support under R.C. 3109.05 at the time she gained custody of either child. *Id.* at 223. The court noted that "to order reimbursement for past support expenses would be manifestly unfair to the non-custodial parent." *Id.* The court also stated:

> Today's decision does not prevent an action to receive or modify future child support payments. R.C. 3109.05. It is the belief of this court, however, that the importance of finality outweighs any inequities caused by the failure of the custodial spouse to act at the time custody is granted.

(Citation omitted.) *Id.* at 225.

{¶ 21} For several reasons, *Meyer* does not prevent a child support agency from filing a motion for support under R.C. 2151.36 after a child is committed. First, there is a

crucial distinction in the language between the two statutes providing for support orders. R.C. 2151.36, which was not at issue or discussed in *Meyer*, states that the juvenile court "shall issue an order" of support. As discussed, this language is mandatory. *In re Pease* at ¶ 6. In contrast, R.C. 3109.05(A)(1), the statute under which the mother failed to request a support order in *Meyer*, does not require a court to issue an order of support: "In a divorce, dissolution of marriage, alimony, or child support proceeding, the court *may* order either or both parents to support or help support their children." (Emphasis added.)

{¶ 22} Second, considerations of "finality" in *Meyer* arose from the length of time the mother had custody of the children before requesting a retroactive order of support: two years for one child and two and one-half years for the other. Furthermore, her custody of one child had terminated *before* she filed the motion. She was requesting reimbursement from the father from a child that she no longer had any expenses for. Here, in contrast, FCCS filed its motion six weeks after the juvenile court issued the TCC order. (June 30, 2015 Motion.)

{¶ 23} Finally, the "finality" argument assumes that Mother and Father were entitled to rely on the juvenile court's May 13, 2015 judgment entry adopting the May 4, 2015 decision of the magistrate, which did not include an order for child support. The entry adjudicated C.D. as delinquent and temporarily committed her to the custody of FCCS under R.C. 2151.353(A)(2). Although captioned a judgment entry, there was little that was definitely settled by it. The entry expressly stated that the order of commitment under R.C. 2151.353(A)(2) was to "continue until further order of the court," and set a future hearing date for review of the order. Multiple review dates were set in the case plan, which the juvenile court approved and adopted as its own order. Furthermore, the juvenile court gave notice that it would continue to exercise jurisdiction over the matter. *See* R.C. 2151.353(F)(1) (providing that "[t]he court shall retain jurisdiction over any child for whom the court issues an order of disposition pursuant to division (A) of this section"). Given that such jurisdiction included the juvenile court's authority to issue an order of support under R.C. 2151.36, Mother and Father were not entitled to rely on the May 13, 2015 entry as the juvenile court's final statement of their responsibilities regarding the support of their minor child.

{¶ 24} For the foregoing reasons, appellants' first assignments of error are overruled.

## IV. SECOND ASSIGNMENTS OF ERROR

{¶ 25} Mother and Father argue that the juvenile court erred by failing to advise them of their right to court-appointed counsel before C.D.'s adjudication as a delinquent minor and temporary commitment to the custody of FCCS.

{¶ 26} Ohio Juv.R. 4(A) states:

> Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding.

{¶ 27} Additionally, R.C. 2151.352 states that a "child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings" before the juvenile court, or delinquency proceedings under R.C. Chapter 2152.

{¶ 28} In *In re Hinko,* 84 Ohio App.3d 89, 94-95 (8th Dist.1992), the Eighth District reversed and remanded a juvenile court that had ordered parents of a delinquent child to pay child support under R.C. 2151.36. Neither parent was allowed to speak or had counsel until the final hearing in the case, and the juvenile court did not hear their arguments until "after the trial court had reached numerous conclusions about appellants' fitness as parents." *Id.* at 95. Based on the juvenile court's failure to ever advise them of their right to counsel, the Eighth District reversed and remanded.

{¶ 29} Here, it is undisputed that neither Mother nor Father were appointed counsel during the delinquency proceedings.  A review of the transcript shows that neither Mother nor Father were informed of their right to counsel during the May 4, 2015 hearing, the outcome of which adjudicated C.D. as delinquent. Thus, the juvenile court erred by not failing to inform Mother or Father of their right to counsel.

{¶ 30} Nevertheless, as Mother and Father both concede, they were appointed counsel by the juvenile court after FCCS filed the motion for support. The ruling on that motion is the only error they assert on appeal, not any ruling made by the juvenile court during the delinquency proceeding. Mother and Father each had an attorney who

represented their interests to oppose the motion for child support filed by FCCS. This is in stark contrast to the parents in *In re Hinko,* whose right to counsel was only belatedly allowed at the last hearing in their child's case. Because neither Mother nor Father were deprived of counsel in any way that affected their ability to oppose the ruling they contest on appeal, the juvenile court's error when it failed to inform them of their right to counsel was harmless.

{¶ 31} Citing *In re J.W.*, 171 Ohio App.3d 248, 2007-Ohio-2007 (10th Dist.), Mother and Father argue that the juvenile court's failure to advise them of the right to have counsel appointed was a "structural concern" that nevertheless requires reversal. (Mother's Brief at 19; Father's Brief at 12.) In *In re J.W.,* this court reversed a trial court's decision to terminate a father's parental rights of his abused child and grant permanent custody to FCCS. *Id.* at ¶ 29. After ruling on the Father's assignments of error, we noted that some situations should require the appointment of two attorneys to represent the child: one to represent the interests of the child under Juv.R. 4(A) and another to protect the interests of the child as a guardian ad litem under Juv.R. 4(B). "The roles of attorney and guardian ad litem can conflict in situations when the child, especially an allegedly abused child, wants something which conflicts with what the guardian ad litem feels is in the child's best interests." *Id.* at ¶ 27. We noted with disapproval that "no separate attorney was appointed to represent the child for over one and one-half years," and described the failure of the juvenile court to appoint an attorney as a "structural concern which was not addressed in an assignment of error, but may be significant for further cases." *Id.* at ¶ 26-27. This appeal does not present such a case, as the juvenile court appointed counsel to represent C.D., and nothing in the record suggests the conflict that formed the basis for our concern in *In re J.W.*

{¶ 32} Although we agree with Mother and Father that the trial court erred by not informing them of their right to counsel at the outset of the delinquency proceedings, this error was harmless, as it relates to this appeal, as they were appointed counsel that represented their interests when opposing the motion for support. Accordingly, their second assignments of error are overruled.

**V. THIRD ASSIGNMENTS OF ERROR**

{¶ 33} In their third assignment of error, Mother and Father argue that the trial court erred by ordering them to pay support under R.C. 2151.36 because the statute does not provide specific support for such an award when the parent is the victim of the delinquency offense. (Mother's Brief at 21-22; Father's Brief at 13-16.)

{¶ 34} Contrary to Mother and Father's assertion, R.C. 2151.36 does authorize the child support award ordered by the juvenile court. The authorization applies "when a child has been committed as provided by this chapter or Chapter 2152," encompassing all orders of commitment that the juvenile court makes, including ones authorized by the delinquency statute. R.C. 2151.36. The only exception noted in the statute concerns the commitment of an adopted child under R.C. 2151.361, which states that "the juvenile court, at its discretion, may issue" the support order. Otherwise, as is the case here, the support order is mandatory. R.C. 2151.36; *In re Pease*, 2006-Ohio-2785 at ¶ 6. There is no exception under R.C. 2151.36 based on the nature of the delinquency or the victim of the offense. The General Assembly might agree with Mother and Father, but creating the exception they argue for is "a policy decision that comes within the purview of the General Assembly, not the courts." *Pauley v. Circleville*, 137 Ohio St.3d 212, 2013-Ohio-4541, ¶ 38.

{¶ 35} The sole case cited by Mother and Father to support their argument that such an exception should be recognized is *In re Krechting*, 108 Ohio App.3d 435 (12th Dist.1996). In *In re Kretching*, after a child had been adjudicated delinquent for having assaulted his mother, a child services agency filed a motion seeking support from her. *Id.* at 436. The trial court overruled the motion, but the decision was reversed and remanded. *Id.* at 438. While understanding the trial court's "reluctance" to order a single mother of modest means "to provide financial support to a child who has assaulted her" the Twelfth District Court of Appeals nevertheless held that the trial court's only error was to not complete the worksheet required by R.C. 3113.215 or to make any findings of fact supporting its decision. *Id.* at 438.

{¶ 36} As in *In re Kretching*, we sympathize with Mother and Father's ordeal and the difficult circumstances that brought them before the court. Nevertheless, *In re Kretching* does not actually support their position, as the court recognized that R.C. 2151.36 would have authorized the support order, even though the trial court had denied

it. *Id.* at 436 (stating "When a child is in the temporary custody of a children's services agency, the juvenile court is authorized to examine the income of the child's parent and order that parent to pay for the care, maintenance, and various other expenses of the child" and citing R.C. 2151.36). If the Twelfth District had interpreted R.C. 2151.36 to preclude a juvenile court from ordering child support when a parent is the victim of a child's offense as a matter of law, it would not have remanded the case to the juvenile court to "provide adequate justification" for denying support. *In re Kretching* at 438.

{¶ 37} Because we recognize no exception under R.C. 2151.36 that precludes the juvenile court from ordering child support from Mother and Father, their third assignments of error are overruled.

## VI. FOURTH ASSIGNMENTS OF ERROR

{¶ 38} Finally, Mother and Father argue that the juvenile court erred by failing to consider all the factors under R.C. 3119.23 and only grant a $100 downward deviation from the support amount calculated by the magistrate. Both parents argue that the juvenile court should have applied additional factors under R.C. 3119.23 and deviated the child support amount down to zero. They point out that, under appropriate circumstances, a court may apply the R.C. 3119.23 factors and determine that a deviation to zero is appropriate. (Mother's Brief at 23-27; Father's Brief at 17-20.)

{¶ 39} The trial court did not abuse its discretion when it did not deviate Mother and Father's child support obligation to zero. As discussed, R.C. 2151.36, the statute that authorized the order of support, "includes mandatory language" that "requires the trial court to order the parents to pay the expenses of committing the child to state care." *In re Pease* at ¶ 6. In *In re Pease*, the Third District noted that the General Assembly had modified the language of R.C. 2151.36 from permissive to mandatory, and the court interpreted that change as an indication that "the legislature has specifically determined that the financial circumstances of the parents are irrelevant to whether or not they should be ordered to pay these expenses." *Id.* at ¶ 7. The court observed that:

> The General Assembly specifically included the mandatory language of the statute when the section was amended in 1996 in H.B. 294. The previous version of the statute provided that "the juvenile court may make an examination regarding the income of the parents, guardian, or person

> charged with the child's support, *and may then order* that the parent, guardian, or person pay [the expenses]." The amendment to the statute leaves no doubt that individual circumstances of the parents is not a consideration; the statute requires the parents to pay the costs of the child's support.

(Emphasis added.) *Id.*

{¶ 40} This interpretation is supported by examining pre-amendment interpretation of R.C. 2151.36. *See In re Rosser*, 9th Dist. No. 16911 (June 14, 1995) (interpreting former R.C. 2151.36 as giving "the Juvenile Court discretion whether to make an examination of the parents' finances and whether to order the parents to pay for expenses").

{¶ 41} Furthermore, the case that Mother and Father cite to support their contention that a court may authorize a deviation to zero amount of support when applying the R.C. 3119.23 factors, *Kuper v. Halbach*, 10th Dist. No. 09AP-899, 2010-Ohio-3020, involved a child support award ordered during a dissolution. The statute authorizing a court to make child support awards during a divorce or dissolution is R.C. 3109.05, which states that "the court may order either or both parents to support or help support their children" Here, in contrast, the juvenile court's order arose under R.C. 2151.36, a statute that requires the court to order a child support award.

{¶ 42} This is not to say that the juvenile court lacked the authority to determine the amount of child support. After reviewing the calculation worksheets prepared by FCCS that the magistrate adopted and the parents' arguments, the juvenile court decided to deviate the amount, pursuant to its authority to do so under R.C. 3119.22. The statute states:

> The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be

unjust or inappropriate and would not be in the best interest
of the child.

{¶ 43} In its application of the R.C. 3119.23 factors, the juvenile court stated that it "examined the statutory factors and weighed each factor against the transcripts, exhibits, and court record." (Oct. 25, 2016 Decision and Jgmt. Entry at 11.) In particular, it stated that its deviation resulted from consideration of factors (K) and (P). (Decision and Jgmt. Entry at 13.) Factor (K) is "[t]he relative financial resources, other assets and resources, and needs of each parent." R.C. 3119.23(K). Factor (P), the catchall factor, is "[a]ny other relevant factor." R.C. 3119.23(K).

{¶ 44} Mother and Father contend that the juvenile court failed to consider factor (A), any "[s]pecial and unusual needs of the child[]," and factor (M),"[t]he physical and emotional condition and needs of the child." R.C. 3119.23. They also argue that the juvenile court failed to "fully" consider their financial situation when it applied factor (K), and that it should have applied factor (P), the catchall factor, to deviate the amount to zero, based on the fact that Mother was the victim of C.D.'s offense. (Mother's Brief at 24-25; Father's Brief at 18-19.)

{¶ 45} The record does not support these assertions. As mentioned, the juvenile court specifically stated that it "examined  the  statutory  factors  and  weighed  each factor" against the evidence. (Oct. 25, 2016 Decision and Jgmt. Entry at 11.) It provided a lengthy discussion of the family's financial situation before concluding that the original award would be "unjust and  inappropriate and not in the best interest of the Minor  Child " due to the fact that the goal of the case was eventual family reunification, not simply reimbursing the state for its expenses in caring for C.D. (Decision and Jgmt. Entry at 13.) Thus, the juvenile court found that "a deviation  in  the  child  support order will  ensure that  Mother  and  Father are  in  a position  to  reunify  with  the  Minor  Child, in  order to  maintain  on-going  household expenses." *Id.*

{¶ 46} Furthermore, the juvenile court expressly stated that it considered the fact that Mother had been the victim of C.D.'s offense when it considered the catchall factor, stating that it was:

> [C]ognizant  of  policy  considerations  where  a  victim  is
> required  to  pay  child  support,  such  as  is  the  case  here.

> However, the question of a deviation in domestic violence cases, such as the one before this Court, is not a simple "yes" or "no," but a consideration in the deviation analysis and has been considered here under R.C. 3119.23(P).

(Decision and Jgmt. Entry at 11.)

{¶ 47} For the reasons discussed, under R.C. 2151.36, the juvenile court properly considered the status of Mother as a victim under the catchall provision and this, along with a careful examination of the family's financial situation, resulted in a deviation from the original support calculation. The juvenile court's analysis and findings were based on a thorough consideration of the very difficult circumstances before it. Even if we were to agree with Mother and Father that a particular factor should have carried more weight in the analysis, "an appellate court may not merely substitute its judgment for that of the trial court." *Roberts v. Roberts*, 10th Dist. No. 08AP-27, 2008-Ohio-6121, ¶ 5, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131 (1989), *superseded by statute on other grounds*. The decision of the juvenile court was not unreasonable, arbitrary or unconscionable, and, therefore, not an abuse of discretion. The fourth assignments of error are overruled.

{¶ 48} Having overruled all assignments of error, we affirm the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

———————————